JAMES S. GRAY *vs.* MARIE G. CURRIER.

MARIE G. CURRIER *vs.* JAMES S. GRAY.

Middlesex. December 4, 1924. — April 16, 1925.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Contract*, Performance and breach, Construction. *Evidence*, Relevancy and materiality, Competency. *Agency*, Existence of relation. *Practice, Civil*, Discretionary determination of question preliminary to admission of evidence. *Waiver*.

A driver of wells made a contract in writing with a woman, who was the proprietor of a camp school conducted on land owned by her in New Hampshire, by which it was provided that he would sink a well on her premises to a depth of fifty feet or more for $7 per foot; that she could stop the drilling at any time but must pay at the agreed price for at least fifty feet; that she would pay for fifty per cent of the work done every fifty feet as the work progressed, and for the full amount drilled as soon as the drilling stopped. The contract did not specify any time within which the work was to be done, nor any depth to be attained, nor any amount of flow to be secured. The contract was made in September. The driver knew that the well was wanted for the next summer. He began work in October and ceased in the next July. The delay caused damage to the landowner. Cross actions between the parties for breaches of the contract were tried together. *Held*, that

(1) It appearing that the driver let one of his workmen go in June and thus caused delay, evidence was admissible tending to show that he did so because he did not have money to pay the workman by reason

of the fact that the landowner had not kept her agreement to pay as the work progressed;

(2) An exception to the exclusion of evidence of a conversation between an agent of the landowner and a son of the driver urging early work in the fall was overruled, since, although it appeared that the son had negotiated the contract for his father, he testified that at the time of the conversation in question he was not living with his father but was working elsewhere and did not communicate the conversation to his father, the determination of the preliminary question, whether the son was an agent of his father to receive the conversation, being for the judge and his decision not being clearly wrong;

(3) Under the terms of the contract, the duty rested upon the landowner to learn for herself when payments were due and then to pay;

(4) Notice and demand were not conditions precedent to the driver's right to require and enforce payments under the contract.

An exception to a portion of a charge to a jury will not be sustained where the charge appears fully to protect the rights of the excepting party and the bill of exceptions does not show that any request for instructions on the point raised was presented before argument or that any suggestion of form of statement was made to the judge when the exception to the charge was claimed.

CROSS ACTIONS OF CONTRACT for alleged breaches of contract by Gray to sink a well for Currier and by Currier to pay therefor. Writs dated June 12, 1923, and August 16, 1923.

In the Superior Court, the actions were tried together before *Qua,* J. Material evidence and exceptions by Currier are described in the opinion. In the first action, there was a verdict for the plaintiff in the sum of $2,843.59, and in the second action there was a verdict for the defendant. Currier alleged exceptions.

*W. J. Nolan,* for Currier.

*F. M. Qua,* for Gray.

WAIT, J. These two actions of contract were tried together. Gray sued for the agreed price of sinking a well. Mrs. Currier brought a cross action for damages caused by delay of Gray in completing the work. Verdicts in favor of Gray were returned in both actions and the cases are before us upon exceptions of Mrs. Currier to the admission and exclusion of evidence and to portions of the charge to the jury.

The contract, which was dated September 26, 1921, was in writing and was drawn up by Gray after negotiation between his son Leland, acting for him, and Mr. Currier,

acting for his wife.   It provided that Gray should sink a well on premises of Mrs. Currier at Peterboro, New Hampshire, to the depth of fifty feet or more for $7 per foot for every foot drilled; that he should furnish casing and that Mrs. Currier should supply water for the boiler; that Mrs. Currier could stop the drilling at any time, but must pay at the agreed price for at least fifty feet; that Mrs. Currier should pay for fifty per cent of the work done every fifty feet as the work progressed, and for the full amount drilled as soon as the drilling stopped.   Thus, it did not specify any time within which the work was to be done; nor any depth to be attained; nor any amount of flow to be secured.   Gray knew that Mrs. Currier wanted the water to supply a camp school to be carried on by her in the summer of 1922.   He brought his machinery to the premises about October 27, 1921, and he ceased drilling on July 7, 1922.   Mrs. Currier and her husband were away most of this period, although Mr. Currier was at Peterboro on several occasions and saw Gray but had no conversation about the well.   A Miss McKissick, who was executive secretary for the camp school and private secretary for Mr. Currier, and who could have been found to have authority to act for Mrs. Currier in matters affecting the camp school, was on the premises and spoke with Gray three times in April and almost daily after the first of May.   She testified that in April she told him the Curriers were worried because they knew he had not been working, and asked how he was getting on; and that daily in May and early June she had asked when he expected to get water and declared that something would have to be done if he did not get it.

No payment was made or tendered as the work progressed; and, late in May, Gray wrote asking for money.   He received no letter in reply, but spoke with Miss McKissick. The testimony was conflicting in regard to what was said. Gray testified that when he asked Miss McKissick why his money was not sent him, she said Mr. Currier was not good natured the morning he received the letter; while Miss McKissick stated that she said Currier was not satisfied with Gray's performance, and that when Gray said "How

can I go on digging the well without money?" she replied
that, if he had been on his job, he could get his money.  She
testified that she made the same answer whenever Gray asked
her about money.

About June 7 Gray notified Miss McKissick that he had
found water.  The well was then between two hundred and
two hundred and seventy-five feet deep, and the flow six
or seven gallons per minute.  They spoke about the well,
which Gray said he did not regard as a good one.  Miss
McKissick asked if he could get more water by going on.
Gray said he did not know.  She told him if there was a
chance of getting more water to keep drilling; and when he
said "How about my money?" she replied "You will get
your money."  He did keep on until July 7.  On June 7 he
let a man go who had been at work with him.  Mrs. Currier
excepted to the admission of testimony that this was done
because he did not have the money to pay him.  This
evidence was admissible.  By the terms of the contract
payment was to be made as the work progressed fifty per
cent for each fifty feet.  If by reason of failure to receive
payments justly due, Gray was compelled to reduce his
force and thus delay completion, he was entitled to show it
in defence to a claim that he delayed unreasonably.  *Wallis*
v. *Wenham*, 204 Mass. 83.

When Gray ceased drilling on July 7, no one had given
him·orders to stop.  He stopped because he believed further
drilling would not produce more water.  The well was tested
by an engineer for Mrs. Currier on July 15, and was found
to be three hundred and seventy-seven feet and three inches
deep, with a flow of six or seven gallons per minute.  After
Gray reported the flow from the well on June 7, Mrs. Currier
made arrangements for securing a larger supply elsewhere,
and she incurred an expense in excess of $4,000 in obtaining
such supply.  She was, further, damaged by delay in opening
the camp school.

Gray testified that the first time anybody had ever said
anything to him about a time when the work was to be com-
pleted was in the winter of 1922, when Mr. Currier, in refus-
ing a demand for payment, stated that the work was to have

been finished before July 1, 1922. Mrs. Currier offered testimony that, in the fall of 1921, one Wood, at the request of Mr. Currier and after failing to find the senior Gray, saw Leland Gray and told him that Mr. Currier was displeased because Gray was not proceeding with the work; that he wanted him to use every effort to get the preliminary work done in the fall, so that there should be no question of delay when the school opened. Leland Gray testified that he had nothing to do with the work after the contract was signed; that he was at work elsewhere, was not living with his father, and never communicated to his father what Wood said. The testimony was excluded. Mrs. Currier's exception must be overruled. What was said between Wood and Leland Gray was obviously incompetent to affect his father unless Leland was agent for his father. It was for the judge to decide, as a preliminary matter, whether agency was made out sufficiently. His decision will not be disturbed. It was not clearly wrong. *Hathaway* v̇. *Congregation Ohab Shalom*, 216 Mass. 539.

Mrs. Currier's remaining exceptions relate to the charge. The jury were instructed that, unless there was unreasonable delay on Gray's part, he was entitled to recover. He must prove that he had performed his contract by completing the ·work within a reasonable time. If he had been delayed because of Mrs. Currier's breach of contract in failing to make payments as required by the contract, he was not chargeable with such delay, if any, as arose· from that cause. Mrs. Currier excepted to this part of the charge; and contends that, until notice of the depth drilled and demand for payment by Gray, there was no obligation to pay on her part. The exception is not well founded. Under the terms of the contract, the duty to pay and to ascertain when payments were due rested upon Mrs. Currier. She could stop the work at any time. She was to pay as the work progressed. The work was done on her premises, and, for much of the time, under the eye of her agent, Miss McKissick. It was for her, not for Gray, to ascertain the necessary facts so that payment could be made with each fifty feet of added depth. Notice and demand by Gray was neither an express nor an implied

condition in the contract. *Vyse* v. *Wakefield,* 6 M. & W. 442. *Lent* v. *Padelford,* 10 Mass. 230. Williston, Contracts, § 894.

Mrs. Currier also excepted to the portion of the charge which, in substance, permitted the jury to consider whether there had been a waiver on her part of any claim for delay. The exception is without merit. The statement of the brief that, "The court erred in instructing the jury they might consider the failure of the defendant to pay the plaintiff money as a waiver of any damage she might have or would suffer" is erroneous. No such instruction was given. The jury were allowed to consider whether there was any waiver of a claim for damages in what took place about June 6 or 7, when, as they might find, Gray continued drilling after complaint of delay, on an assurance from Miss McKissick that if he drilled deeper he should get his money. They were instructed that the language was not conclusive evidence of waiver of a claim for delay; and, that it was no evidence at all of a waiver of delay occurring afterward. They were warned that there was no waiver unless such was the intention, and, furthermore, that they must first decide whether Miss McKissick had authority to waive any claim of Mrs. Currier's. The bill of exceptions does not show that any request for instructions on the point was presented before argument, or that any suggestion of form of statement was made to the judge when the exception to the charge was claimed. Mrs. Currier's rights were sufficiently protected.

We find no error presented by the bill of exceptions.

*Exceptions overruled.*