MICHAEL HARTIGAN *vs.* EASTERN RACING ASSOCIATION, INC.

Suffolk.   January 6, 1942. — April 2, 1942.

Present: FIELD, C.J., QUA, DOLAN, & RONAN, JJ.

*Agency*, Scope of authority.  *Practice, Civil*, Offer of proof, Preliminary question, Ordering verdict.

Evidence, that an assistant general manager of a race track, who was in charge of policing the grounds, customarily gave general instructions to detectives furnished to the track by a detective agency and sometimes gave them specific directions as to what they should do and made decisions as to prosecutions, warranted a finding that he was acting within the scope of his authority on an occasion when he gave the detectives what virtually amounted to an order to assault the plaintiff, which was immediately followed by an assault by them.

After the introduction of certain evidence by the plaintiff not showing liability, followed, at the suggestion of the trial judge, by an "offer of proof" by the plaintiff in narrative form of the substance of the remaining evidence which he expected to introduce and which would have warranted a finding of liability, it was error to "exclude" "the evidence in the . . . offer of proof" and to order a verdict for the defendant.

A trial judge should hear all competent evidence offered on a preliminary question of fact before deciding that question.

TORT.  Writ in the Superior Court dated August 5, 1937.

The action was tried before *Warner*, J., who ordered a verdict for the defendant.  The plaintiff alleged exceptions.

*H. J. Williams*, for the plaintiff.

*G. S. Lowden*, for the defendant.

QUA, J.   The plaintiff claims that he was assaulted and injured at the "Suffolk Downs" race track in Revere by "Pinkerton men" in the employ of the defendant.

At the trial the question of agency became a principal issue.  The plaintiff testified that he was approached by "a police officer" in uniform and two men in civilian clothes; that as a result of a conversation with them he accompanied them to "the headquarters of the Pinkerton Detective Agency" in a small building in front of the grand stand. Several "Pinkerton men" were there present, including one

Kallman. One Gibson testified in substance that he was the defendant's accountant and vice-president; that the "Pinkerton men" were working directly under the defendant's general manager; that the manager gave his "instructions or suggestions" to "the man in charge of the Pinkerton detail"; and that if there was something wrong the manager would notify "whoever was in charge of the Pinkertons" to "clear that situation up, but in his own way. He wouldn't tell him how to do it." Gibson further testified that the Pinkerton agency billed the defendant weekly for the men and their expenses; that Kallman "was the particular Pinkerton man in charge of his associates"; that one Linnehan, employed by the defendant, had charge of the crowds, parking, and policing of the track with the exception of the Pinkertons, "who worked directly under the general manager"; that Kallman was in charge of the "Pinkerton men"; that if there was trouble it would be called to Kallman's attention, and he would send his men to straighten it out; that "the methods used to straighten out such trouble was left to the Pinkertons"; that the manner in which the matter would be handled "would rest with the Pinkertons themselves"; and that "the track at no time undertook to give any detailed instruction to the Pinkerton operators as to the method of carrying out their activities." There was evidence tending to show that the Pinkerton agency hired the "Pinkerton men," but that the defendant indicated from time to time how many it desired.

At this point in the trial the judge expressed doubt as to the sufficiency of the evidence of agency to hold the defendant, and suggested that the plaintiff embody "his proposed additional testimony in the form of an offer of proof." Thereupon the plaintiff made the following offer of proof.

"The plaintiff's offer of proof is that the witness James Linnehan if called would testify that he was the assistant to one Wilson, manager of the defendant corporation in the conduct of Suffolk Downs track for the year 1936, and that he, Linnehan, customarily gave general directions to the Pinkerton men assigned to the track, and on certain

occasions gave specific directions as to what the Pinkerton men should do in the apprehension of persons suspected of law breaking, and also made decisions as to what persons should be prosecuted criminally; and that on July 4, 1936, Linnehan was present when the plaintiff was conducted to the Pinkerton headquarters at the track, and said to Kallman, the manager of the Pinkerton force, with reference to the plaintiff, 'Give him the works'; that thereupon the Pinkerton men conducted the plaintiff inside the Pinkerton headquarters and closed the door and assaulted the plaintiff, and that during this occurrence Linnehan remained immediately outside the closed door, and immediately following the assault Linnehan directed that criminal charges be preferred against the plaintiff."

The judge "excluded the evidence in the foregoing offer of proof" and directed a verdict for the defendant.

The action of the judge was equivalent to a ruling of law that the offered evidence, taken in connection with what had gone before, would not warrant a verdict for the plaintiff. We think that the ruling was wrong. If the evidence offered had been received and had come up to counsel's expectations there would have been evidence that Linnehan, an employee of the defendant who had to do with crowds, parking and policing, customarily gave general directions to the "Pinkerton men" and sometimes gave "specific directions" as to what they should do in making arrests and made decisions as to who should be prosecuted. In view of the nature of Linnehan's duties, as stated in the offer of proof, his authority over policing and prosecutions, and his "general directions" to the "Pinkerton men," it would seem a reasonable inference that on the occasions when he gave "specific directions" in this same field he likewise spoke in behalf of his employer with the voice of authority. Acts habitually performed by an agent may import acquiescence by the principal and become evidence of his authority. *C. F. Hovey Co., petitioner,* 254 Mass. 551, 555. *Kelly* v. *Citizens Finance Co. of Lowell, Inc.* 306 Mass. 531, 533. Am. Law Inst. Restatement: Agency, § 43. See *Rice* v. *James,* 193 Mass. 458, 463, 464; *Stoneman* v. *Fox*

*Film Corp.* 295 Mass. 419, 426. The question presented in *Fletcher* v. *Willis*, 180 Mass. 243, cited by the defendant, differed from that here raised. It could have been found that on this occasion Linnehan gave to Kallman a specific direction which, if it was not a command to assault the plaintiff, was at least likely to lead and, according to the offer of proof, did lead to an immediate assault upon him. Kallman could be found to have submitted to and acted under the order of Linnehan. *Mason* v. *Jacot*, 235 Mass. 521. *Zygmuntowicz* v. *American Steel & Wire Co. of New Jersey*, 240 Mass. 421. See *Coughlin* v. *Rosen*, 220 Mass. 220, 222, 223. Evidence of Gibson in so far as it tended in the opposite direction could have been disbelieved or its effect minimized by the triers of fact. An inference of responsibility on the defendant's part was by no means the only permissible inference, but we think that it was a possible one.

It is obvious that the offer of proof here made did not purport to indicate the precise form of the questions and answers to be put to the witness or witnesses if the evidence had been admitted. It was a condensed statement of the substance of the expected testimony. It assumes that competent questions would be put and competent answers secured. In this respect it is like an opening made by a plaintiff at the beginning of a trial and not like an offer of the precise answer expected to a particular question as in *Hallwood Cash Register Co.* v. *Prouty*, 196 Mass. 313, cited by the defendant, or in *Coral Gables, Inc.* v. *Beerman*, 296 Mass. 267, and cases cited.

The defendant urges that the judge was not required to admit evidence of the conduct of the alleged agent Linnehan at the time of the alleged assault unless and until he himself first decided as a preliminary finding of fact that Linnehan was acting within the scope of his authority. *Hathaway* v. *Congregation Ohab Shalom*, 216 Mass. 539, 544. *Gray* v. *Currier*, 252 Mass. 78, 82. But the judge should hear all competent evidence offered by a party bearing upon such a preliminary question of fact before he decides such a question against that party.

*Exceptions sustained.*