WALTER J. PERRAS *vs.* THE HI-HAT, INC.

Middlesex.    May 2, 1950. — June 5, 1950.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Assault. Agency*, What constitutes.

A finding, that the proprietor of a night club was responsible for an un-
justified assault made upon a patron by a police officer who had been
summoned to the night club because of a disturbance not participated
in by the patron and his companions, was not warranted by evidence
showing that before the assault the bartender of the night club, acting
within his authority, had requested the officer to try to get rid of the
patron and his companions on the ground that they were getting
boisterous, but not showing that the bartender actively instigated the
assault or that the officer acted in any capacity other than as an
officer.

TORT.    Writ in the Superior Court dated April 5, 1946.

The action was tried before *Dowd*, J., who ordered a ver-
dict for the defendant.    The plaintiff alleged exceptions.

*W. S. McCallum,* (*V. R. Brogna* with him,) for the plain-
tiff.

*A. B. Goodspeed,* for the defendant.

SPALDING, J.    This is an action of tort for assault and
battery.    The defendant operates a night club in the city
of Lowell.    The premises comprise a "Melody Lounge"
where dancing takes place, and a grill room in which there
are a bar and tables.    About 9:30 in the evening of Janu-
ary 23, 1946, the plaintiff and four companions went to the
defendant's premises.    While there, except for some time
spent in the Melody Lounge, they sat at the bar.    Around
11:30 a disturbance arose in the Melody Lounge and the
hostess (Miss Boyle) who was in charge of the Lounge tele-
phoned to the police for assistance, as she had been instructed
to do when she was unable to preserve order.    Three police
officers of the city of Lowell, Sullivan, Corkery and Lock-
wood, responded to this call, arriving at the defendant's

premises shortly before 12:40 A.M. Two of the officers, Sullivan and Corkery, were in uniform, but Lockwood, who had finished his tour of duty and was on his way home, had taken off his tunic and had put on his civilian jacket and top coat. Neither the plaintiff nor any member of his group had participated in the disturbance which resulted in the police being called in. Those who were involved in the disturbance left the premises at the request of the officers. The officers then entered the grill room and entered the kitchen.

Around 12:45 the plaintiff and his companions "ordered another round of beers" but were told by the bartender that it was "closing time and they could have no more to drink." One of the group, whose home was in New Jersey, said, "In New Jersey our bars close at three in the morning." The bartender replied, "Well this is Massachusetts and under our law bars close at one o'clock." The plaintiff and his companions then finished their drinks and around 12:50 went to a coat rack near the door to get their hats and coats. The plaintiff testified that while they were putting on their coats he saw the bartender speak a few words to the police officers (who had meanwhile returned from the kitchen) and point in the direction of the plaintiff and his companions. One of the police officers testified that the bartender said to him, "This group . . . [meaning the plaintiff's group] are boisterous; try to get rid . . . [of them], they're shut off." The bartender testified that he said to the officers, "It is closing time. These boys are getting rough. Will you see that they leave the premises?" He also testified that the plaintiff was not drunk but "the boys were feeling their liquor."

The officers then went over to where the plaintiff and his companions were and one of the officers told them to leave. While the plaintiff was picking up some rubbers for one of the group, Officer Lockwood "punched him in the jaw." The force of the blow sent him through the door into the vestibule, "knocking him out momentarily." Lockwood came into the vestibule, "picked him up and punched him

again," forcing him out of the vestibule into a parking space outside. "Lockwood followed him out and struck him and knocked him down a third time." After that "Lockwood struck him two or three times more." Immediately thereafter the plaintiff and two of his companions were arrested and taken to the police station.

It was the duty of the bartender to "preserve order in his bar and see that things were properly conducted." In the event of disturbance or disorderly conduct he was not to eject anyone physically but was to call the police and to inform them of the disturbance. "It was a police matter then." If anyone was to be ejected the police were to do it.

At the conclusion of the evidence, which in its aspect most favorable to the plaintiff has been summarized above, the judge granted the defendant's motion for a directed verdict. The plaintiff's exception to this action brings the case here.

Plainly it could have been found that the plaintiff while on the defendant's premises was assaulted and beaten by Officer Lockwood without justification. The decisive question is whether the evidence would have warranted a finding that the defendant was answerable for Lockwood's conduct. We are of opinion that it would not. The evidence shows no more than that the defendant's bartender requested the police officers to try to get rid of the plaintiff and his companions because they were getting boisterous. While it could be found that the bartender acted within his authority in calling upon the police officers for assistance, there is no evidence that he directed the officers to assault the plaintiff or gave them any instructions or information from which the likelihood of such an assault was reasonably to be anticipated. Nor is there any evidence that would have supported a finding that they were acting in any other capacity than as police officers. What they did after the bartender spoke to them was done on their own initiative and responsibility as police officers in view of what they had seen and heard. It was not conduct for which the defendant was answerable. The case falls within the au-

thority of such decisions as *Dixon* v. *New England Railroad,* 179 Mass. 242, 249, *Burnham* v. *Collateral Loan Co.* 179 Mass. 268, 274, *Zinkfein* v. *W. T. Grant Co.* 236 Mass. 228, 232, and *Shea* v. *Sullivan,* 261 Mass. 255, 258–259. See note 55 A. L. R. 1204 et seq. This is not a case where the acts complained of could have been found to be committed by persons employed as servants or agents of the defendant. Nor is it a case where the tortious conduct of the officers was actively instigated by the defendant or its agents or servants. Consequently such cases as *Hirst* v. *Fitchburg & Leominster Street Railway,* 196 Mass. 353, *Mason* v. *Jacot,* 235 Mass. 521, *Hartigan* v. *Eastern Racing Association, Inc.* 311 Mass. 368, *McDermott* v. *W. T. Grant Co.* 313 Mass. 736, 738, and *Schultz* v. *Purcell's, Inc.* 320 Mass. 579, cited by the plaintiff, are not controlling.

*Exceptions overruled.*