Brassard, J.
This case arises out of medical treatment administered by defendant Dr. John J. Cicconi (“Dr. Cicconi”) and received by plaintiff Frederick LaFleur (“Mr. LaFleur”) at the New Life Center, Inc. (“New Life”). Mr. LaFleur, his wife, plaintiff Adele LaFleur (“Mrs. LaFleur”) and their minor child, plaintiff, Frederick LaFleur (“Frederick”) allege that defendants Father Robert Masciocchi (“Father Masciocchi”) (Count III) and New Life (Count V) negligently hired, trained and supervised Dr. Cicconi. In addition, plaintiffs allege negligent infliction of emotional distress (Count II) as to all defendants and gross negligence as to Father Masciocchi (Count VI). Mrs. LaFleur also seeks damages for loss of consortium (Count VII) of her husband arising out of the alleged negligence on the part of New Life and Father Masciocchi, while Frederick seeks loss of companionship and parental society (Count VIII) of his father arising out of the asserted negligence claims. New Life and Father Masciocchi now move for summary judgment as to the relevant counts.[3] For the following reasons, New Life’s and Father Masciocchi’s motion for summary judgment is DENIED.
BACKGROUND
New Life, a non-profit corporation, located at 20 Pond Street, Waltham, Massachusetts, provides counseling services in a Christian environment. Father Masciocchi, an ordained priest, serves as Director and President of New Life in addition to providing counseling services. In July 1992, Dr. Cicconi, a psychiatrist, obtained an office at New Life to provide psychiatric services to its members. In November 1993, Mr. LaFleur began treatment under the supervision of Dr. Cicconi for his mental illness and addiction to alcohol. Subsequent to commencing treatment, Mrs. LaFleur began to notice a deterioration in Mr. LaFleur’s behavior and mental state. Mrs. LaFleur contends, that without her knowledge, Dr. Cicconi had prescribed Dexedrine to Mr. LaFleur.
As a result of Mr. LaFleur’s change in behavior, Mrs. LaFleur approached Father Masciocchi in the summer of 1994. Father Masciocchi explained to Mrs. LaFleur that he would speak with Dr. Cicconi about his treatment of Mr. LaFleur and would get back to Mrs. LaFleur with any pertinent information regarding this matter. Subsequently, Father Masciocchi spoke with Mrs. LaFleur about Dr. Cicconi’s treatment of Mr. LaFleur and allegedly stated that he was satisfied with Dr. Cicconi’s prescribed course of treatment. In addition, Mrs. LaFleur alleges that Father Masciocchi suggested that Mr. LaFleur’s deterioration was a result of his manic-depressive illness and not- Dr. Cicconi’s treatment. Mr. LaFleur asserts that he also approached Father Masciocchi in response to Dr. Cicconi’s prescribed course of treatment. Mr. LaFleur explained to Father Masciocchi that he had taken forty-five (45) Dexedrine tablets that Dr. Cicconi had prescribed. Mr. LaFleur specifically contends that he approached Father Masciocchi at this point in order to get Dr. Cicconi to stop prescribing Dexedrine for him.
In August 1994, Father Masciocchi learned that Dr. Cicconi had been prescribing inappropriate medication to Mr. LaFleur. Despite this realization and awareness, Dr. Cicconi continued to prescribe Dexedrine for Mr. LaFleur through November 1994. In November 1994, as a result of Mr. LaFleur’s increasingly destructive and odd behavior, Mrs. LaFleur obtained the pharmacy records of Mr. LaFleur. The pharmacy records indicated prescriptions for massive quantities of Dexedrine to Mr. LaFleur over an approximate ten- *648 month period. At this point, Mrs. LaFleur requested a meeting with Father Masciocchi in order to review Mr. LaFleur’s pharmacy records. During this time period, Mrs. LaFleur insisted that Father Masciocchi fire Dr. Cicconi.
On December 6. 1994, Dr. Cicconi wrote a letter to Father Masciocchi stating,
... as to my official termination date relative to my presence and employment at the New Life Counseling Center. You are in possession of a signed document dated Tuesday, December 6, 1994, in which I consented to an “immediate leave of absence.” This designation essentially verified my consent to not meet with clients in clinical session.
DISCUSSION
I. Standard of Review
Summary judgment is appropriate when no material facts are in dispute and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Highlands Ins. Co. v. Aerovox, Inc., 424 Mass. 226, 232 (1997). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and showing that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion. Pederson, 404 Mass. at 17.
II. Negligence as to New Life
To prevail on a claim for negligence, plaintiffs must prove that 1) there was a duty or standard of care owed to them by New Life; 2) New Life’s conduct constituted a breach of such duty or violation of such standard of care; 3) New Life’s conduct was the proximate cause of their harm; and 4) plaintiffs suffered actual harm. See Armstrong v. Lamy, 938 F.Sup. 1018, 1048 (D.Mass. 1996). In order to succeed on its motion, New Life must demonstrate that it owed no duty to act reasonably in the investigation, hiring, training and supervising of Dr. Cicconi. Since the existence of a duty and ultimate liability on the part of New Life turns on whether an employee/employer relationship existed between New Life and Dr. Cicconi, for the purposes of this motion, New Life must demonstrate that such a relationship was not present. See Foster v. The Loft, Inc., 26 Mass.App.Ct. 289, 290-91 (1988).
The key element in determining the existence an employee/employer relationship is the right of control that an employer has over an employee. See Cowan v. Eastern Racing Ass’n, 330 Mass. 135, 141 (1953). Further, Massachusetts appellate authority holds that in examining whether an employee/employer relationship exists in the context of a psychiatrist, a court can look at factors such as the regulation of the psychiatrist’s work hours, where the psychiatrist worked, what patients the psychiatrist treated, whether the psychiatrist treated other patients outsid e of this practice, and whether his or her income is based on the number of patients treated. See McNamara v. Honeyman, 406 Mass. 43, 48 (1989). At bar, there are material facts reasonably in dispute pertaining to the above mentioned factors.
First, there is a dispute as to whether Dr. Cicconi was required to be at New Life full-time or whether he could set his own hours. In addition, there is a material dispute as to whether New Life required Dr. Cicconi to be available for its referrals and whether any remuneration from referrals constituted his salary. Plaintiffs argue that Dr. Cicconi was required to work full-time at New Life and that he attended all administrative and clinical meetings held monthly. In addition, brochures and newsletters distributed by New Life referred to Dr. Cicconi as a member of New Life’s staff. Further, plaintiffs assert that the rent paid by Dr. Cicconi was tied to the amount of patient volume that he was receiving. Plaintiffs also point to the language in Dr. Cicconi’s resignation letter stating, “as to my official termination date relative to my presence and employment at the New Life Counseling Center. You are in possession of a signed document dated Tuesday, December 6, 1994, in which I consented to an immediate leave of absence.” Also, plaintiffs point to the fact that after Dr. Cicconi was terminated, he was prohibited from treating any patients at New Life as evidence of New Life’s control of Dr. Cicconi.
New Life contends that Dr. Cicconi leased an office at New Life and that nobody on the New Life staff had the right or ability to control, direct or supervise his practice of psychiatry, his treatment of patients, and his ultimate medical decisions. Specifically, New Life contends that any right of control is prohibited by G.L.c. 112, §6.[4] In light of this conflicting evidence, the right of control is a question of fact for the jury. See Cowan, 330 Mass. at 142.
Plaintiffs also contend that the actions on the part of New Life created the appearance that Dr. Cicconi was an employee of New Life and that they relied to their detriment based on this appearance. Pursuant to the “ostensible” or “apparent” agency theory, an organization may be held liable for the acts of independent contractors if the organization held itself out as if it were the employer of the independent contractor and there is reasonable reliance on those representations. See Chase v. Independent Practice Ass’n, Inc., 31 Mass.App.Ct. 661, 665 (1991) (holding that HMO may be held liable under a theory of “ostensible” or “apparent” agency if HMO creates an appearance' that physician is its employee, regardless of physician’s actual status). The summary judgment record here includes evidence that both Mr. LaFleur and Mrs. LaFleur reasonably believed, based on the actions of Father Masciocchi and New Life, that Dr. Cicconi was an employee of New Life. Therefore, there again exists *649 a question of fact for the jury as to this issue, even if Dr. Cicconi was an independent contractor. Accordingly, summaryjudgment as to Count V is DENIED.
III. Negligence and Gross Negligence as to Father Masciocchi
Father Masciocchi argues that he is immune from liability based on G.L.c. 231, §85W, which provides, in pertinent part:
[N]o person who serves without compensation, other than reimbursement for actual expenses, as an officer, director or trustee of any non-profit charitable organization including those corporations qualified under 26 USC Section 501 (c)(3) shall be liable for any civil damages as a result of any acts or omissions relating solely to the performance of his duties as an officer, director or trustee: provided, however, that the immunity conferred by this Section shall not apply to any acts or omissions intentionally designed to harm or to any grossly negligent acts or omissions which result in harm to the person.
Father Masciocchi argues that he receives no compensation or remuneration from New Life in serving as its President and Director. Plaintiffs counter by arguing that compensation for which Father Masciocchi is entitled for his work as President and Director of New Life, is instead paid to the Stigmatine Fathers, who in turn provide for all of Father Masciocchi’s needs. As such, there is a genuine issue of material fact in dispute as to whether Father Masciocchi is compensated for his work and thus whether the statute cited by him is applicable. Therefore, summary judgment as to Count III and Count VI is DENIED.
VI. Negligent Infliction of Emotional Distress
Plaintiffs assert a claim for negligent infliction of emotional distress against New Life and Father Masciocchi based on a theory of vicarious liability. Since there are material facts in dispute as to whether defendants can be held vicariously liable, there remains a question of fact for the jury. Accordingly, New Life’s and Father Masciocchi’s motion for summary judgment as to Count II is DENIED.
V. Loss of Consortium and Loss of Companionship and Parental Society
Since claims of loss of consortium and loss of companionship and parental society arise from the alleged vicarious liability of defendants, defendants’ motion for summaryjudgment as to these claims must be DENIED.
ORDER
For the foregoing reasons, defendants’ motion for summaryjudgment is DENIED as to all counts.

 It should be noted that only New Life and Masciocchi have moved for summary judgment and as such, only the claims pertaining to these two defendants will be addressed in this decision.

 General Laws c. 112, §6, provides, in pertinent part:
whoever, not being lawfully authorized to practice medicine within the Commonwealth . . . practices or attempts to practice medicine in any of its branches . . . shall be punished by a fine of not less than one hundred nor more than one thousand dollars or by imprisonment for not less than one month nor more than one year, or both.