Lauriat, Peter M., J.
In this action, the plaintiff, Brooks Place Properties, LLC (“BPP”) seeks, inter alia, to recover damages from Century 21 Real Estate LLC (“Century 21”) for misrepresentations Arthur Vekos allegedly made in connection with the sale of four properties. Century 21 has now moved for summary judgment on all counts against it. For the following reasons, Century 21’s motion is allowed.
BACKGROUND
The relevant facts are taken from the record, viewed in the light most favorable to BPP as the non-moving party. See Attorney Gen. v. Bailey, 386 Mass. 367, 371 (1982).
*148 Century 21 is a franchising corporation that grants non-exclusive rights to use its system of operating real estate businesses to independently-owned and operated real estate franchises. In exchange for payments of royalties and other fees, Century 21 permits franchisees to use Century 21’s trademarks, trade names and service marks in the course of their business. Century 21 also provides franchisees with assistance in national advertising and promoting its brand. Century 21 does not operate as a real estate broker or real estate agency in Massachusetts.
Heritage Realty Associates, Inc. (“Heritage”) is areal estate brokerage firm in Massachusetts. Between February 1998 and January 2001, Heritage entered into four separate franchise agreements with Century 21 for the operation of real estate brokerage offices in four different locations. While the location address varied, each Franchise Agreement contained the same general terms — Heritage agreed to pay royalty fees and comply with Century 21’s Policy and Procedure Manual, and in exchange, Century 21 agreed to provide certain training programs, national advertising and referral forms for use in referring business between Century 21 franchises.
The Franchise Agreements also required Heritage to place a conspicuous sign near the front entrance of its offices, and to include on its business cards, stationery, and promotional and advertising materials, the words “Each Century 21® office is independently owned and operated.” The Franchise Agreements also stated that “Franchisor [Century 21] shall not regulate the hiring or firing of Franchisee’s salespeople, the parties from whom Franchisee may accept listings or for whom Franchisee may sell properly, the commission rates charged by Franchisee, the commission splits between Franchisee and Franchisee’s salespeople, the details of the work performed by Franchisee or its sales associates, the manner in which Franchisee obtains listings or sells property, the working conditions of Franchisee’s salespeople, or Franchisee’s contracts with clients or customers ...” Ex. A §14.B.
As a franchisee, Heritage was required to follow Century 21’s Policy and Procedure Manual, which controlled Heritage’s real estate listings, the words Heritage used to answer its telephone, where Heritage deposits its checks, the location of its offices, and what furniture Heritage may use. Century 21 consultants were occasionally sent to Heritage offices to ensure Heritage followed these strict guidelines.
BPP was a private lender who provided loans to prospective buyers to purchase four properties in Massachusetts. Arthur Vekos, a Heritage independent contractor, served as the real estate agent for the sellers in each of the transactions at issue. Vekos allegedly told BPP that he was a very experienced Century 21 real estate agent, that he was familiar with the properties involved in the transactions, and that the properties were “well valued.” Vekos denies telling BPP he was a Century 21 agent. Although Vekos has a Century 21 email address, BPP does not recall receiving any emails from this address. BPP did not receive any communications from other Century 21 representatives.
BPP believed Century 21 agents had a reputation for honesty, reliability and fair dealing because of its national advertising campaign in the 1980s and 1990s. But BPP cannot recall a specific advertisement or a Century 21 slogan on which it relied, and it denies relying on any advertisements from 2007 when the transactions closed. Nevertheless, on the belief that Vekos was an honest, reliable Century 21 agent, BPP proceeded with the transactions.
After the transactions closed on August 7, 2007, BPP discovered the properties were worth a fraction of their purchase prices, that the titles were subject to defects, encumbrances and liens, and that the buyers defaulted on their loan payments. BPP suffered substantial monetary losses as a result of these transactions.
BPP filed numerous claims against multiple defendants, alleging fraud, negligence and negligent misrepresentation as to Vekos, and negligence and violations of c. 93A as to Heritage and Century 21. Century 21 has moved for summary judgment on all counts against it.
DISCUSSION
Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on each relevant issue and that the summary judgment record shows that it is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16 17 (1989). The moving party may satisfy this burden by submitting affirmative evidence negating an essential element of the non-moving party’s case, or by demonstrating that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Comm’ns Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
When the moving party establishes the absence of a triable issue, the burden shifts to the non-moving party to allege specific facts establishing the existence of a genuine issue of material fact. Pederson, 404 Mass. at 17. The non-moving party cannot defeat summary judgment by resting on its pleadings or mere assertions of disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). In considering a motion for summary judgment, the court may only consider pleadings, depositions, answers to interrogatories, admissions on file, and affidavits which would be admissible in evidence at trial. Community Nat’l Bank v. *149 Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). See Glaz v. Ralston Purina Co., 24 Mass.App.Ct. 386, 387 (1987) (judge properly disregarded deposition excerpts that were conclusory in nature and based on hearsay); Madsen v. Erwin, 395 Mass. 715, 721 (1985) (“The rationale for requiring admissible evidence in affidavits is to ensure that trial would [not be] futile on account of lack of competent evidence” (quotations omitted)). The court must view the evidence in the light most favorable to the non-moving party. Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 539 (1995).
I. Negligence as to Centuiy 21 (Count XXIII)
BPP’s First Amended Complaint alleges that Century 21 is vicariously liable for Vekos’s negligent acts; that Centuiy 2 l’s principals, officers and directors are liable for the negligent hiring and supervision of Vekos; and that as a Centuiy 21 employee, Vekos was permitted to operate negligently.
Centuiy 21 responds that Vekos was neither its employee nor its agent and, therefore, it cannot be held vicariously liable on any of the negligence claims.[1] BPP contends that Century 21 is vicariously liable on the theoiy of apparent agency, and that there is a genuine issue of material fact whether BPP’s reliance on Vekos’s apparent agency was reasonable.
Vicarious liability creates liability in the principal for the acts of its agent. Lev v. Beverly Enterprises-Massachusetts, Inc., 457 Mass. 234, 238 (2010); Elias v. Unisys Corp., 410 Mass. 479, 481 (1991). To prove vicarious liability, the plaintiff must first establish a master-servant relationship, either through an employer-employee or principal-agent relationship, at the time of injury. Cowan v. Eastern Racing Ass’n, 330 Mass. 135, 141 (1953). In the franchise context, a master-servant relationship may be established when the franchisor has the right to control the franchisee’s day-to-day operations or the instrumentality that caused the harm. See Coworx Staffing Services LLC v. Coleman, 2007 Mass. Super. Lexis 39 at *15-16 (Mass. Super. Ct. Feb. 7, 2007) [22 Mass. L. Rptr. 166).
In the present case, there was no master-servant relationship between Centuiy 21 and Vekos because Centuiy 21 did not play a role in Vekos’s hiring or supervision. The Franchise Agreement expressly prohibited Centuiy 21 from hiring, firing, or controlling any of the details of the work performed by any Heritage salesperson. Although Centuiy 21 maintained control over the use of its marks and promotional materials, the day-to-day operations were ultimately Heritage’s responsibility. In addition, Vekos was only an independent contractor working for Heritage. Vekos’s alleged liability cannot be imputed to Centuiy 21 because Centuiy 21 had no employment relationship with or control over Vekos’s actions.
BPP contends that Century 21 retained significant control over Heritage’s operations, relying on Centuiy 2l’s Policy and Procedure Manual and internet screen shots of Century 2 l’s internal communications. There are two fatal flaws in BPP’s arguments. First, BPP relies on a screen shot that is not authenticated, and, even if it was authenticated, it is not relevant.[2] Second, even if admissible, the evidence only shows that Century 21 controlled Heritage’s real estate listings, the words Heritage must use to answer the telephone, where Heritage deposits its checks, the location of its offices, and what furniture Heritage may use. There is no evidence that Century 21 controlled how real estate listings should be sold.
In the absence of actual agency, vicarious liability may still be imposed when there is apparent agency. Chase v. Independent Practice Assoc. Inc., 31 Mass.App.Ct. 661, 667 (1991). Apparent agency occurs when the principal’s conduct causes a third party to reasonably believe that a particular person is the principal’s agent. Davaux v. American Home Assur. Co., 387 Mass. 814, 819 (1983).
BPP asserts that it believed Vekos was a Centuiy 21 agent because of Centuiy 2l’s advertising campaign, reputation in the community, and Vekos’s own statements.[3] However, because apparent authority requires actions by the principal, Vekos’s own statements are irrelevant in establishing apparent agency. BPP contends that Century 2 l’s advertisements caused BPP to believe Vekos was a knowledgeable Centuiy 21 agent. However, BPP can only vaguely recall Centuiy 21 advertisements from the 1980s and 1990s; it is unable to identify a specific advertisement or what the advertisements stated. Furthermore, BPP failed to proffer or identify any Century 21 advertisements actually used in 2007, when the transactions took place.
Finally, B.P. argues that Vekos’s use of a Centuiy 21 email address demonstrates that Centuiy 21 took action to cause B.P. to believe Vekos was a Century 21 agent. But there is no evidence that B.P. ever received email through, from or via Vekos’s Centuiy 21 email address.
For these reasons, Century 2l’s motion for summary judgment is allowed as to Count XXIII of the First Amended Complaint.
II. Violation of c. 93A (Count XXIV)
BPP’s c. 93A claims also fail because there is no evidence in the record that demonstrates Centuiy 2l’s actions were unfair or deceptive. B.P. contends that Centuiy 21 misled the public into believing Centuiy 21 agents were directly affiliated with Centuiy 21, trustworthy and reliable. However, B.P. cannot identify a specific statement or other admissible evidence to support its argument. For these reasons, Centuiy 2l’s motion for summary judgment is allowed as to Count XXIV of the First Amended Complaint.
*150 ORDER
For the forgoing reasons, the Motion for Summary Judgment of Defendant Century 21 on Counts XXIII and XXIV of Plaintiffs First Amended Complaint is ALLOWED.

 Century 21 also asserts that it was not negligent in providing the operating model for negligent hiring and supervision of Vekos. This conduct is not alleged in the First Amended Complaint. See First Amended Complaint, ¶¶254, 255, and 256. Nor is there any evidence that Century 21’s operating model played a role in the hiring of Vekos.

 The internal communications screen shot states that a consultant helped hire an agent for Heritage, but does not indicate who the agent is.

 BPP also relies on Gaudet’s deposition in which he claims Vekos told him he was a Century 21 agent and handed him a Century 21 business card. This evidence is inadmissible and must be disregarded because Gaudet has no relationship to this case and his testimony is hearsay.