MARGARET MESSINA & another *vs.* RICHARD BAIRD
COMPANY.

Suffolk.   November 6, 1957. — February 12, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, COUNIHAN, &
WHITTEMORE, JJ.

*Agency*, What constitutes, Lent employee.   *Negligence*, Contractor,
Threshold, Contributory.

Confusing and ambiguous evidence as to the relation between a corpora-
tion and a "company" and the relation to both of a workman who
installed a door in a dwelling warranted findings with respect to the
installation that the workman was at least an employee borrowed by
the corporation doing its work under the direction of its foreman and
that it was responsible for the workman's negligence.   [11–12]
Evidence did not require a finding that the owner of a dwelling had so
accepted the work of a contractor in installing a door therein as to
bar recovery by a child of the owner against the contractor for in-
juries sustained when she tripped and fell over a piece of wood nailed
to the threshold of the doorway by the contractor's workman in the
course of the work about two weeks previously.   [13–14]
A finding was warranted that a workman installing a door in a dwelling,
by nailing and leaving in place a piece of wood two inches high along
the full length of the threshold to block a space caused by a slope in
the threshold, was negligent toward a child of the owner who was in-
jured subsequently when she tripped over the piece of wood in going
through the doorway.   [14]
The mere fact that a girl's attention was directed to a piece of wood
nailed to the threshold of a doorway of her home did not require a
finding as matter of law that she was guilty of contributory negligence
when subsequently she tripped and fell over the piece of wood.   [14]

TORT.   Writ in the Superior Court dated February 5,
1954.

There was a verdict for the plaintiffs at the trial before
*Morton*, J.

*Bertram A. Sugarman*, for the defendant.

*S. Roy Remar*, for the plaintiffs.

WHITTEMORE, J.   These are the defendant's exceptions to
the denial of its motions for a directed verdict and for a
verdict under leave reserved.   The jury, taking the evidence

most favorably for the plaintiffs, could have found facts as
follows: The minor plaintiff (hereinafter called the plain-
tiff), a girl seven or eight years of age, was injured on March
31, 1953, when she tripped and fell in passing through the
rear doorway of the house in Revere owned by her parents
in which she lived with her family. The plaintiff tripped on
a piece of wood, a two-by-four, which had been nailed to
the threshold by a workman, one Webb, about two weeks
before March 31 in the course of installing an aluminum door
pursuant to a contract for door and window installation be-
tween the plaintiff's father and mother and the defendant.
The two-by-four extended the full length of the threshold
and had been installed by Webb without instructions from
or prior knowledge of any other person. It was so placed as
to be flush with the inner side of the door in its closed posi-
tion in order to block the entrance of the elements through
a space under the door which resulted from a sag in the
building and a consequent slope in the threshold. The
space was about one and five eighths inches high at the
lower end of the threshold and tapered out to nothing at
the other end. The doorway had been measured prior to
the date of installation of the door and the door had been
built on the premises of the defendant.

The evidence of the relationship between the defendant
corporation and the workman at the time of the installation
was ambiguous and confusing. From the testimony of Webb,
the jury could have concluded, with reasonable construction
of ambiguities, as follows: In 1952 and in 1953 until a date
after the subject installation the workman was on the pay-
roll of "Warner Doormaster Company," which was not
identified as a corporation, a partnership or an independent
proprietorship, but which was affiliated in some way with
the defendant, Richard Baird Company. The man who
signed his payroll checks "stamped Warner Door" was the
manager or owner of the defendant. The defendant was
a "sales outfit." "Warner Door" "contract[ed] as the
worker . . . [and] did their work for them." The defend-
ant did install also but "handle[d] mostly windows in their

outfit." Later in 1953 Webb went to work for the defend-
ant as a service man. Webb was ordered to do the work by
one Sweet who was "connected with, or one of . . . [his]
superiors at Warner Doormaster." Sweet was originally
with the defendant company, but "was at Warner Door-
master at that time." Work which Webb did in or about
1952 was work for the defendant.[1]

From the testimony of the general manager of the de-
fendant, given prior to Webb's testimony, the jury could
have found the following facts, not inconsistent with the
foregoing: Only the general manager, a shop foreman and
an outside man were on the defendant's payroll directly.
The storm door installer, Webb, worked for the defendant
at one time, sometime in 1953; at the time the door was
installed he was not on salary with the defendant. He "was
sent to the plaintiffs' premises by a foreman of the de-
fendant company,"[2] to do the work which was being done

---

[1] As Webb finally left it, he was not testifying that he was on the de-
fendant's payroll at any time prior to a date in 1953 after the door was in-
stalled. (Direct examination) "Did you work sometime in 1952 for the de-
fendant here? . . . A. Yes . . . I was a foreman of the door place, installa-
tions; foreman for installations . . . [with his place of business] on Brookline
Avenue . . . [not 1117 Commonwealth Avenue (the defendant's address on
the contract with the plaintiff's parents)]. That was the Baird Company.
Q. . . . How long had you worked for the Baird Company? . . . A. About
a year, anyway. . . . Q. . . . did you get any order . . . to go over to this
house? A. Yes . . . Q. . . . from whom did you get your orders? . . .
A. By the shop foreman. Q. He was with Richard Baird Company? A. Well,
connected some way with them. I don't know — Q. You were doing this
for Richard Baird Company? A. That's right." (Redirect examination, after
testifying on cross-examination to employment by Warner Doormaster Com-
pany and that the order came from "Sweet of Warner Door") "Q. . . . Mr.
Sweet was the general superintendent of the defendant company, wasn't he?
A. At one time, he was with Baird. Q. Wasn't he with Richard Baird Com-
pany? A. Originally, but he was at Warner Doormaster at that time. Q. Isn't
it a fact . . . that he was in complete charge of the Richard Baird Company?
A. I don't believe he had charge, no. Q. Wasn't he the office manager?
A. No, not office manager. . . . He was shop manager. Q. . . . So you were
working directly under him? A. I was his assistant, yes. Q. Yes, and that
was December 24 — A. Yes . . . . Q. — or whatever time you put the
door on? A. That's right." (The workman, contrary to the plaintiff's
parents, had testified to installation on December 24, 1952.) "Q. Didn't
you . . . tell the court a moment ago that you were working for Richard
Baird Company in 1953? A. 1953, yes . . . . Q. There was some question
whether you were working for Richard Baird Company in 1952? A. There was
no question. I was working for Warner Door."

[2] "Q. He wasn't working for the Baird Company at the time this door was
installed? A. . . . I am not sure. Q. . . . When he was paid, he was paid
for the work that he did as an individual? A. Yes . . . he would get so

"in accordance with . . . [the] agreement" with the plaintiff's parents.

Other testimony of the general manager, possibly inconsistent with Webb's, must be noticed, namely: The installation was done on "piecework." There were twenty salesmen or applicators working for the defendant on "piecework." The installer of the doors at the plaintiff's house "normally . . . worked with a cousin as an independent contractor." "That was the term . . . we gave them in the business."

The plaintiff's older sister saw the two-by-four installed and pointed it out to the plaintiff. When the plaintiff's mother arrived home in the evening after her daughter was hurt she saw the two-by-four and on the following day she "called the company"; the night she arrived home she called the salesman who had negotiated the contract but did not get hold of him. The glass in the door was broken by the fall and had not been replaced up to the time of trial (February, 1957) and the two-by-four was still in place. The plaintiff's father did not call the company when he saw the two-by-four but he spoke to his wife about it. The defendant had "records of service complaints [at the property] and . . . some had been rectified."

The judge submitted to the jury three questions: "Was . . . Webb an agent or employee of the defendant when he put the door in? Was there any negligence on the part of Webb in putting that two-by-four in the place? Did this little girl trip over the two-by-four, in consequence of which she went through the lower pane of glass in the door?" To each question the jury answered "Yes."

The evidence permitted the conclusion that Webb was

much — Q. He wasn't on the salary of the Baird Company? A. To the best of my knowledge, he wasn't . . . ."

"The installer of the storm doors was sent to the plaintiffs' premises by a foreman of the defendant company."

"Q. . . . He was sent out by the Baird Company to do the work there? A. He would have been sent out by a foreman, I believe. Q. It was in accordance with that agreement that I stated a moment ago, that is, the work was being done by him in accordance with this agreement that is marked Exhibit No. 17? A. Yes."

sufficiently the agent or employee of the defendant to charge the defendant with Webb's negligence. The jury could have found that Webb was working under the direction of a foreman of the defendant. Acceptance of Webb's testimony that he was employed and paid by "Warner Doormaster Company" did not require rejection of the testimony of the defendant's general manager, stated in the bill of exceptions in narrative form without qualification, that "The installer of the storm doors was sent to the plaintiffs' premises by a foreman of the defendant company." Perhaps the general manager was intending this to be understood as stating the fact only if the work had been done at a time when Webb was doing piecework for the defendant, and was not on the "Warner Doormaster Company" payroll. He was uncertain in his testimony. We do not think, however, that his testimony was such that the jury had to accept or reject all of it. See *Cosman* v. *Donovan*, 282 Mass. 224, 228; *DiManno* v. *DiManno*, 332 Mass. 709, 711; compare *Sullivan* v. *Boston Elevated Railway*, 224 Mass. 405, 406. The testimony of the general manager and of Webb was consistent with "Warner Doormaster Company" having been a division or department of the defendant, with separate bank account, but without separate legal identity, so that even if Sweet was a "shop foreman" for "Warner," he was as such in law a foreman of the defendant. Even if Warner had been an independent legal entity, the jury could have found that orders to Webb were given by one who, if a foreman for Warner, was also foreman for the defendant. Nothing that the general manager and Webb testified to was necessarily inconsistent with this. On this premise the evidence permits the conclusion that, though paid by Warner, Webb was a borrowed employee for whose acts the defendant was responsible, inasmuch as he was doing business of the defendant, and business which was directly within the scope of the defendant's enterprise. Smith: Scope of the Business: The Borrowed Servant Problem, 38 Mich. L. Rev. 1222, 1233 et seq.; 1248 et seq. *Hasty* v. *Sears*, 157 Mass. 123, 124, and cases cited. *Langevin's Case*, 326 Mass. 43, 47–48.

See also *Kimball* v. *Cushman,* 103 Mass. 194, 198; *Cosman* v. *Donovan,* 282 Mass. 224, 230. The jury could have found that a foreman of the defendant had the power to direct and control the work (see *Standard Oil Co.* v. *Anderson,* 212 U. S. 215, 221–222; *Coughlan* v. *Cambridge,* 166 Mass. 268, 277) even though inevitably there would be a measure of discretion in the workman on the job. See *Delory* v. *Blodgett,* 185 Mass. 126, 128–129; *Langevin's Case,* 326 Mass. 43, 47–48; *Cowan* v. *Eastern Racing Association, Inc.* 330 Mass. 135, 141. The jury were not obliged to accept the testimony of the general manager that the installers were "independent contractor[s]." See *Chisholm's Case,* 238 Mass. 412, 419.

It was, we suppose, within the power of the defendant to show beyond doubt what the facts were as to the relationship between the defendant, Webb, and "Doormaster." In the circumstances the plaintiff was clearly entitled to have the jury consider that part of the general manager's testimony which was favorable to the plaintiff notwithstanding its possible conflict with other parts of his testimony, or with the most plausible reconciliation of his testimony with the later testimony of an employee, who could be expected to have little sure knowledge of the legal identity of, and relationship between, the closely associated companies, on whose work, in one way or another, he was engaged.

We do not think that there was acceptance of the work by the plaintiff's parents such as to bar recovery. There are decisions indicating that, at some stage after a contractor has turned work over to the owner, the owner's election to accept the premises with the dangerous condition built in, and so to maintain them, may be deemed to end the contractor's responsibility, whether expressed in the concept that proximate causation has been interrupted, or that there is no longer a duty owed by the contractor to one who may be hurt. *Cunningham* v. *T. A. Gillespie Co.* 241 Mass. 280. Cases cited in annotation 13 A. L. R. (2d) 195. We need not determine whether or how far the principle underlying *Carter* v. *Yardley & Co. Ltd.* 319 Mass. 92, affects these cases.

Here it could be found that the owners had complained, and had not accepted the work as satisfactory at the time of the accident. Two weeks was not an unreasonable time to allow for the defendant to overcome the dangerous condition.

The installation of the two-by-four could have been found to be negligence. Persons crossing a threshold many times adjust to its height and the necessary lifting of the foot becomes a reflex action. It could have been found that to raise the height of the threshold about two inches meant that it was probable that someone would fall and created a condition of danger. The fact that the plaintiff's attention was directed to the changed condition does not mean that she was contributorily negligent as a matter of law in not recalling the change on a subsequent occasion. See *McCarthy* v. *Great Atlantic & Pacific Tea Co.* 292 Mass. 526, 528; *Wheatley* v. *Kaplan*, 334 Mass. 455, 457. See also, as to contributory negligence of children, *Dennehy* v. *Jordan Marsh Co.* 321 Mass. 78, 81–82; *Ryder* v. *Robinson*, 329 Mass. 285, 287.

*Exceptions overruled.*