Lee POSNER et al., Plaintiffs, Appellants,

v.

PAUL'S TRUCKING SERVICE, INC., et al., Defendants, Appellees.

No. 6894.

United States Court of Appeals First Circuit.

July 14, 1967.

758

Albert P. Zabin, Boston, Mass., with whom Joseph Schneider and Edward M. Swartz, Boston, Mass., were on brief, for appellants.

Walter G. Murphy, Boston, Mass., for Paul's Trucking Service, Inc., appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

This is an appeal from a judgment for defendant, following jury verdict in a negligence action. The accident happened on the Massachusetts Turnpike during a foggy day when the driver-owner of a tractor-trailer, one Hoefle, fell asleep at the wheel and the truck collided with an automobile parked on the breakdown lane. Plaintiff, a passenger in the automobile, suffered serious injuries and (with her husband) brought this action against defendant, Paul's Trucking Service, Inc. (Paul's).

Paul's was a transportation broker, with its office in Chicago. It owned and operated no trucks but contracted with individual truckers to deliver commodi-

ties for its customers. It had used the services of Hoefle on several occasions during the months preceding the accident. Indeed, Paul's was the chief source of his work during this period. Hoefle owned his own tractor-trailer and continued to drive it although he had leased it to one Thomas and carried the name "Jim Thomas Produce" on the side of the tractor.

Hoefle's arrangement with Paul's was that, if a job was available when Hoefle checked at the office, Paul's would determine a flat fee for the trip, give some money to Hoefle as an advance, and pay the balance due when Hoefle reported for his next trip. Paul's did not carry Hoefle on its payroll and did not deduct withholding tax, etc., from its payments to him. Hoefle would sign a bill of lading, receipting on behalf of Paul's for goods picked up at a warehouse. The bill of lading bore the proviso that " * * * the truck operator is an independent contractor and does not expect [Paul's] to furnish any * * * insurance covering said truck operator."

On February 21, 1961, Hoefle had driven 400 miles, from Chicago to Detroit and back, during 10 hours on a trip for Paul's. On the next day he called at Paul's office at 10:30 a. m., then drove to a warehouse where his van was loaded with cans of frozen eggs. Since the refrigerating equipment on the trailer was out of order, a Paul's employee put fifteen blocks of dry ice with the load to maintain the temperature. The load's

destination was Portland, Maine, but, since Hoefle lacked the necessary plates to enter Maine, his instructions were to arrive at a terminal in Fall River, Massachusetts, the next day [1] so that transshipment to Maine could be made that night. The distance between Chicago and Fall River was stipulated to be 1050 miles.

On February 22, Hoefle, driving alone, left Chicago—at noon, according to his testimony and log book; between 4:00 and 5:00 p. m., according to one of defendant's officers—using the toll roads as being the quickest way to arrive in Fall River by 4:00 p. m. on the following day. At 10:00 p. m., he reached a way station in Pennsylvania called Larry's Truck Stop, 400 to 450 miles from Chicago. He slept from 10:30 to 3:30 a. m.,[2] then, because his truck was stuck in the mud, worked until 5:30 a. m. extricating the truck with the aid of a wrecker. He left at 5:30 a. m., driving without stopping except to pay tolls, and began to feel drowsy at around 1:00 p. m. Being "in a hurry" to reach the terminal, he did not stop to rest, though the day was very foggy and the road was wet. He fell asleep at the wheel and the accident happened at about 2:00 p. m.

■ The dispositive issue raised by this appeal is that presented by the district court's instructions to the jury concerning defendant's possible negligence. The court properly ruled that Hoefle was an independent contractor.[3] Having done so, it properly set forth the legal

1. Hoefle's testimony was that he was told to arrive by 4:00 or 5:00 p.m. on February 23; one of defendant's officers said that he "had until the next day to deliver" but denied giving an express instruction as to time of arrival.

2. A police officer, however, testified that after the accident Hoefle told him that he had not slept for 31 hours.

3. Plaintiff urges that it would have been possible for a jury to have found that a master-servant relationship existed between Paul's and Hoefle. Two excluded insurance policies covered trucks "rented" by Paul's. Apart from plaintiff's bootstrap argument that Paul's rented

Hoefle's truck because the policies insuring rented equipment are evidence of rental, we deem them properly excludable under the authority of Gladney v. Holland Furnace Co., 336 Mass. 366, 145 N.E.2d 694 (1957). Plaintiff further tries to gain sustenance for an issue of fact from Hoefle's signature on the bill of lading on behalf of Paul's; but the bill of lading is explicit in characterizing the truck operator as an independent contractor. Other arguments addressed to this issue are no more meritorious. The absence of control by Paul's over Hoefle's driving, the payment of flat fees for each job, the ownership of the vehicle by Hoefle, Hoefle's truck lease with Thomas,

standard that the employer of an independent contractor may be liable for physical harm caused by the contractor carrying out orders or directions negligently given by the employer. Collins v. Goodrich, 324 Mass. 251, 253, 85 N.E. 2d 771 (1949). Defendant seeks to confine *Collins* to cases involving control of premises by a landlord, but the Massachusetts court in *Collins* expressly repudiated that limitation. Indeed, it cited a Restatement illustration that the district court viewed as directly analogous to this case.[4]

■ That example is the case of a taxicab passenger who, offering a $5 "reward", tells his driver to get him to the train in five minutes, regardless of traffic signals. The passenger would be liable for harm to another caused by excessive speed. Restatement (Second) of Torts § 410, ill. 4 at 375 (1965). The court properly analogized by putting to the jury the question " \* \* \* did Paul, not explicitly but in effect, direct Hoefle to drive from Chicago to Fall River in a manner involving an unreasonable risk of physical harm to others, including the plaintiffs here, to whom it owed a duty to exercise care." Unfortunately, it clouded the significance of the question by adding:

" \* \* \* Were they binding instructions on him such as were given to him, if in fact you find that any were given to him? Well, that depends on the terms of the contract between Paul's and Hoefle. You will notice that the phrase 'independent contractor' includes the word 'contract,' and that is what you are going to have to find. What was the contract, that is, the agreement, between the

two? Was there an agreement whereby Hoefle would be subject to a direction by Paul's if one was given requiring him to drive from Chicago to Fall River in a manner involving an unreasonable risk of physical harm to others, including the plaintiffs, to whom Paul's owed, if it did in your finding, a duty to exercise care?"

This shifted the focus from risk to agreement. In view of it, the jury may well have thought that the direction to arrive by 4:00 or 5:00 p. m. involved unreasonable risks, but then dismissed the issue by concentrating on the "contract", and concluding that the instructions were not binding under it.

■ A finding that the time limit would create an unreasonable risk seems to us permissible. Taking the evidence most favorable to the plaintiff, the jury could have found that defendant directed Hoefle to travel 1050 miles in 23 or 24 hours (i. e., from 4:00 or 5:00 p. m. on February 21 to 4:00 or 5:00 p. m. on February 22), when it knew that he would leave Chicago on this trip without a relief driver. This would require averaging 44 or 45 miles every hour for 23 or 24 hours. If defendant assumed that Hoefle would rest or sleep 8 hours, and drive 16 hours, the speed would have to average 65 miles per hour. If he were to have only 5 hours of sleep, he would still have to average 55 miles an hour for 19 hours. We think that a jury, taking such a view of the facts, could find that defendant's instruction involved an unreasonable risk of harm to others. At the same time the jury could have found that the instruction was likely to be followed, but—while in fact followed—was not "binding" on Hoefle.[5] In this, an

---

and Hoefle's acceptance of jobs from other brokers adequately justified the court in ruling as a matter of law that Hoefle was an independent contractor. Restatement (Second) of Agency § 220 (2) (1958); cf. Cowan v. Eastern Racing Ass'n, Inc., 330 Mass. 135, 141–142, 111 N.E.2d 752 (1953).

4. That the Massachusetts Supreme Judicial Court does not take a limited view

of the scope of the Restatement's numerous exceptions to the rule that an employer is not liable for the acts of an independent contractor is indicated by the court's opinion in Whalen v. Shivek, 326 Mass. 142, 150, 93 N.E.2d 393, 398–399, 33 A.L.R.2d 74 (1950).

5. Compare South Carolina Nat'l Gas Co. v. Phillips, 289 F.2d 143, 149 (4th Cir. 1961) (dictum): "While the contract

otherwise excellent charge, there was error.

The cases cited by defendant are not to the point. Gladney v. Holland, supra note 3, specifically noted that the defendant in that case had not instructed its employee as to how fast he should drive. But this is precisely the factor present in this case, for a direction to drive 1050 miles in 16, 19, or 24 hours is the equivalent of an instruction to drive at a certain average speed.

Other cases cited by defendant go to the elements of control required to subject an employer to vicarious responsibility for the negligence of his employee. But we are concerned here not with vicarious responsibility but with the direct negligence of defendant in giving the instruction that the jury could have found that it gave.

Since this error in the charge requires a new trial, we need not address the other errors alleged.

Reversed, remanded for new trial.

See also 10 Cir., 365 F.2d 95.

gave [a general contractor] no right to issue such instructions to [a subcontractor], to the extent that they did, if [subcontractor] complied, the defendants would have assumed responsibility for [subcontractor's] acts, which they could not avoid by claiming they had no right to do what they did."