GARY H. DAVIS *vs.* STEVEN L. DELROSSO & another.[1]

Worcester.    December 9, 1976. — January 25, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & LIACOS, JJ.

*Agency,* What constitutes, Police officer, Scope of authority or employment, Agent's liability to third person. *Assault. Practice, Civil,* New trial.

Evidence warranted a finding that an off-duty police officer who was hired by a café to quell disturbances was acting as an employee of the café for its private purposes on its private premises when he assaulted a patron. [771-772]

A new trial was not required where a jury returned a verdict of $45,000 for the plaintiff, and the judge allowed the plaintiff to remit $20,000 from the verdict. [772-773]

TORT.    Writ in the Superior Court dated June 6, 1973. The action was tried before *Connolly*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Anthony D. Murphy* for Millbury Cafe, Inc.
*Henry P. Grady*, City Solicitor, for Steven L. DelRosso.
*John F. Keenan* for the plaintiff.

KAPLAN, J.    The plaintiff Gary H. Davis sued the defendants Steven DelRosso, Millbury Cafe, Inc. (Millbury), and the city of Worcester for damages for an as-

---

[1] Millbury Cafe, Inc.

sault on him by DelRosso, a Worcester police officer who was serving in off-duty hours on paid detail at Millbury's premises. At trial to a jury, the city of Worcester's motion for a directed verdict was granted, and the plaintiff took no appeal from the ensuing judgment. Verdicts of $45,000 each having been returned against Millbury and DelRosso, Millbury moved for judgment notwithstanding the verdict[2] or a new trial; DelRosso moved for a new trial. The trial judge denied the motion for judgment n.o.v. but granted each defendant a new trial unless the plaintiff agreed to remit $20,000 from the verdicts. When the plaintiff agreed to the remittiturs, the judge denied the new trial motions and entered judgments for $25,000. Appealing from the respective judgments, Millbury claims error in the denial of judgment n.o.v. or a new trial; DelRosso claims error in the denial of a new trial.

Under the verdicts, the jury can be taken to have accepted the following version of the facts. The plaintiff, thirty-one years old, an executive of a computer service company, on finishing end-of-month work on Friday, December 29, 1972, about 11:15 P.M., drove a few blocks to Millbury's café, called "Steeple Bumpstead," located on Millbury Street, Worcester. In the evenings the café provided music, dancing, and other entertainment, besides food and drink. The place was crowded as the plaintiff entered. He stood at the bar and ordered a beer, his only alcoholic drink of the day. He recognized a young woman with whom he was casually acquainted — a registered nurse, as it happened — and began to chat with her at the bar.

A man approached and asked the young woman for a dance. She declined. He returned in a few minutes, and, on being again refused, took the young woman by the arm. The plaintiff said, "Leave her alone." At this point the man grabbed the plaintiff by his shirt. The plaintiff pushed

---

[2] Millbury had previously moved for a directed verdict at the close of the evidence, a predicate for a motion for judgment n.o.v. See Mass. R. Civ. P. 50 (b), 365 Mass. 814 (1974).

him away. Neither landed any blows or, it seems, attemped any.

Almost instantly — perhaps in response to a call by a bartender for "Stevie" — DelRosso, evidently in uniform, appeared and stepped between the two. Without inquiring into the merits, he pushed the plaintiff against a wall, and as the plaintiff rebounded, or was pulled from the wall by DelRosso, DelRosso struck him a blow on the mouth with his right fist. This did considerable damage to the plaintiff's upper teeth and bridgework and he began to bleed profusely. DelRosso seized the plaintiff by the hair, pulled or dragged him outside, and shoved him to the ground. The young woman followed outside and asked DelRosso whether she might help the plaintiff; DelRosso rebuffed her and ordered her back into the café. After perhaps ten minutes, a police wagon arrived and the plaintiff was driven to a hospital where, after waiting a half hour, he was given medication, and a cut in his upper lip was stitched. He was then driven to the Waldo Street jail; there he spent the night in a cell. (The record does not indicate on what charges he was held. DelRosso said he had "arrested" the plaintiff in the café for disturbing the peace, and outside the café for drunkenness.)

Reconstruction of the plaintiff's teeth required visits to a dentist over a period of several months. The medical bills came to about $3,000.

On this evidence, DelRosso's own liability for the use of force or excessive force, and for his subsequent behavior, is clear enough. The jury could find the involvement of Millbury was as follows. Millbury had an informal arrangement with the Worcester police department by which the department cooperated in supplying the café with an off-duty policeman for the hours from about 9 P.M. to closing each night, Tuesdays through Saturdays. Millbury paid for these services at an hourly rate by checks to the order of the police department; after tax withholding, the policemen received their shares. (It may be surmised that the routing through the department was intended, at least in part, to assure fairness in the allocation of the work to

the volunteers.) DelRosso had worked at the café on a previous occasion and knew the manager. It was understood, without need for express instructions, that the policeman was there to inhibit disturbances and, if any arose, to quell them.

Whether one who uses the services of policemen on paid detail may be held responsible as a principal for their particular conduct has been made to depend on whether the policemen were properly classified, in respect to conduct of that sort, as "independent contractors" or as "servants" or "employees." This in turn has depended on a multifactored estimate which expresses itself mainly in a conclusion regarding the principal's "right to control" the policemen's activities. See *Luz* v. *Stop & Shop, Inc.,* 348 Mass. 198 (1964); *Cowan* v. *Eastern Racing Ass'n, Inc.,* 330 Mass. 135, 141 (1953); *Posner* v. *Paul's Trucking Serv. Inc.,* 380 F.2d 757, 759 n.3 (1st Cir. 1967).[3]

In the present case we are to assume that the judge instructed the jury correctly, since the defendants do not complain of the instructions and indeed the record appendixes do not reproduce them. Except for very plain cases, the discrimination and determination are for the jury as a question of fact. See *Seelig* v. *Harvard Coop. Soc'y,* 355 Mass. 532, 537 (1969); *Cowan, supra* at 142. So they were here. In reaching verdicts for the plaintiff, the jury were entitled to attach significance to the circumstances, among others, that DelRosso's task (as the jury might believe) was similar to that which has been customarily confided to the bartender or "bouncer"; that his work was to be performed on the principal's premises though it might spill over to the sidewalk (see *Cowan, supra* at 143, 144; cf. *Yates* v. *Salem,* 342 Mass. 460 [1961]; *Kidder* v. *Whitney,* 336 Mass. 307 [1957]); and that he was engaged alone and not, as in some decided cases, in company with other po-

---

[3] Our cases have not always been entirely in accord with the nomenclature of Restatement (Second) of Agency §§ 2, 220 (1958) but they have tended to like results. The problem can sometimes be put as one of "borrowed servants"; see *id.* at § 227, comment c (regarding special police); *Messina* v. *Richard Baird Co.,* 337 Mass. 8, 11-13 (1958).

licemen under the command of a superior officer. See *Luz, supra* at 201; cf. *Kidder, supra* at 308. The jury could find that DelRosso was "acting not as [a] public [officer] in a public place but as [an employee] of the defendant for its private purposes on its private premises." *Cowan, supra* at 144. That DelRosso, implicitly authorized by the principal to use force in appropriate situations, in fact used force inappropriately or excessively, would not relieve the principal here by putting those tortious acts beyond the scope of the employment. See *Suckney* v. *Bert P. Williams, Inc.*, 355 Mass. 62, 63-65 (1968); *Thompson* v. *Beliauskas*, 341 Mass. 95, 98 (1960); *Cowan, supra* at 145; Restatement (Second) of Agency § 245 (1958); Note, 45 U. Cinn. L. Rev. 235 (1976). We perceive no error in the denial of judgment n.o.v.

Nor was there error in the denial of a new trial. It is argued that a verdict of $45,000 was so far excessive that it showed a bias in the jury that could extend as well to their other findings, and so a new trial should have been ordered without opportunity for remittitur. The judge must be taken to have believed otherwise, as he acted under the terms of Mass. R. Civ. P. 59 (a), 365 Mass. 827 (1974),[4] and there is no basis for overriding his judgment in the matter. Cf. *Simmons* v. *Fish*, 210 Mass. 563, 567-569 (1912). In protesting the size of the verdicts and of the judgments after remittitur, the defendants seem to suggest that the recovery should have been measured by reference only to the physical damage to the plaintiff and the cost of the physical repairs, as in an action for negligent injury. But more was involved — the shock and humiliation of a sudden deliberate assault, not to speak of the jailing that followed. As Justice Holmes put it, "even a

[4] Emphasis falls on the word "solely" in the second sentence of Rule 59 (a): "A new trial shall not be granted solely on the ground that the damages are excessive until the prevailing party has first been given an opportunity to remit so much thereof as the court adjudges is excessive." (G. L. c. 231, § 127, was to the same effect, and was not repealed until July 1, 1975 [St. 1975, c. 377, § 109], which postdated this trial.)

dog distinguishes between being stumbled over and being kicked."[5]

*Judgments affirmed.*

---

[5] O. W. Holmes, Jr., The Common Law 7 (M. Howe ed. 1963).