Sosman, J.
Plaintiff Todd Dupre filed the present suit for personal injuries allegedly sustained during an altercation at the Heritage Lounge in Dracut. The named defendants include the police officer serving on detail at the bar on the evening in question (Leonard Wagner) and the Town of Dracut.[1] Plaintiff alleges that Wagner was negligent in performing his duties as a police detail and that the Town of Dracut is responsible for Wagner’s conduct (Count IV). Plaintiff also alleges that the Town was negligent in renewing the liquor license for the lounge in the name of Dracut Heritage, Inc. after that corporation had been dissolved and another entity, defendant Harfra, Inc., had taken over operating the Heritage Lounge (Count V).
Defendants Wagner and the Town have moved for summary judgment on all claims against them. For the following reasons, defendants’ motion for summary judgement is ALLOWED.
Facts
The facts are set forth in the light most favorable to the non-moving party (the plaintiff), resolving all differences and drawing all reasonable inferences in favor of the plaintiff.
On June 12, 1992, Plaintiff Todd Dupre was a patron at the Heritage Lounge located at 50 Pleasant Street, Dracut, Massachusetts. The lounge had a dance floor and a bar in one room, and a second room (known as the “Navy Yard Room”) with pool tables and another bar. The dance floor and bar area are separated from the Navy Yard Room by a hallway.
Plaintiff Dupre was playing pool in the Navy Yard Room on the night in question. He had been in the Navy Yard Room for approximately one hour. He alleges that an intoxicated patron, defendant Michael Falcone, suddenly attacked him without provocation and hit him in the face with a pool cue.
Defendant Leonard Wagner is employed by the Town of Dracut as a police officer. On the night of June 12, 1992, Captain Robert Paquin of the Dracut Police assigned Wagner to an outside detail at the Heritage Lounge. Wagner was performing that detail assignment at the Heritage Lounge when the alleged assault on Dupre occurred. Wagner was the only officer assigned to the Heritage Lounge on the night in question. Plaintiff Dupre alleges that, during the hour he was in the Navy Yard Room prior to the attack, Wagner did not come into the Navy Yard Room.
When the attack occurred, Wagner was standing in the hallway near the entrance to the lounge, some fifteen yards away from the Navy Yard Room. The manager told Wagner there was a disturbance in the Navy Yard Room, whereupon Wagner went to the room and observed an employee of the lounge restraining Falcone. Plaintiff was on the floor, bleeding from his mouth. Wagner called for an ambulance and a police cruiser, and placed Falcone under arrest for assault and battery with a dangerous weapon.
Liquor licenses in the Town of Dracut are to be renewed annually. In 1991, the liquor license for the Heritage Lounge was in the name of Dracut Heritage, Inc. Prior to the annual renewal date, Dracut Heritage, Inc. was dissolved, and ownership of the business was placed in a new entity, defendant Harfra, Inc. Despite that dissolution and change of ownership, the Town’s Board of Selectmen had renewed the Heritage Lounge liquor license for the year 1992 in the name of Dracut Heritage, Inc. In plaintiffs memorandum in opposition to defendants’ summary judgment motion, Dupre also argues (without any evidentiary support) that there had been frequent fights and disturbances at the Heritage Lounge, and that the Town should have denied the renewal of the liquor license or imposed conditions on the license rather than renewing it without conditions.[2]
Discussion
I. Claims against the Town of Dracut A. Renewal of liquor license in the name of dissolved corporation
The Town argues that it is immune from any tort claim under G.L.c. 258 arising out of its decision to renew the liquor license for the Heritage Lounge. In 1993, while this action was pending, the legislature amended G.L.c. 258, §10 to expand the list of exceptions to the Tort Claims Act.[3] Under current law, a plaintiff may not bring an *389 action under the Tort Claims Act for “any claim based upon the issuance, denial, suspension, or revocation or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization.” G.L.c. 258, §10(e).
Plaintiffs claim that the liquor license for the Heritage Lounge should not have been renewed is clearly barred by this new exception to the Tort Claims Act.[4]
B. Liability for Wagner’s failure to prevent the assault
The 1993 amendments to the Tort Claims Act also except from the Act’s coverage various types of claims that seek to hold public employers liable for police failure to prevent crimes or for tortious conduct committed by third parties. The Act now excepts the following:
any claim based on the failure to establish a police department or a particular police protection service, or if police protection is provided, for failure to provide adequate police protection, prevent the commission of crimes, investigate, detect or solve crimes, identify or apprehend criminals or suspects, arrest or detain suspects, or enforce any law. . .
G.L.c. 258, §10(h) (emphasis added). The Act also now excepts “any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer." G.L.c. 258, §10(j) (emphasis added).
Plaintiffs claim that the Town is liable for Wagner’s failure to prevent the assault falls squarely within the description of the types of claims that are now barred. The Town may not be sued for a policeman’s “failure to prevent the commission of crimes." Nor can the Town be sued for any “failure to act to prevent. .. the violent or tortious conduct of a third person.” On the undisputed facts, there is no possible argument that Wagner’s alleged absence from the Navy Yard Room “originally caused” the assault on Dupre. The allegation is merely that his presence would have prevented it, and that therefore, by his absence, he failed to prevent it.[5] As such, this theory of liability against the Town is also barred.
II. Claim against Wagner A. Wagner’s Status as a Public Employee
Dupre has sued Wagner personally, claiming he was negligent in performing his duties on private detail at the Heritage Lounge. Wagner and the Town of Dracut argue that Wagner was a public employee acting within the scope of his employment the night of the incident and that Wagner is therefore immune from this claim.
A public employee is immune from liability for negligent acts performed while acting within the scope of his employment. G.L.c. 258, §2. Thus, plaintiff may not recover against Wagner individually if Wagner was a public employee acting within the scope of his employment while performing his detail on the night in question.
The determination of whether an individual is a public employee acting within the scope of his employment is based on the same respondeat superior principles that govern a principal’s liability for negligent acts of a servant. Kelley v. Rossi, 395 Mass. 659, 661 (1985). “The right to control an agent’s activities has been the guiding principle in deciding cases involving an assertion of vicarious liability against the agent’s principal.” Id. Here, as in Kelley, the question is whether Wagner’s work at the Heritage Lounge was subject to the direction and control of the Town or whether it was subject to the direction and control of the owners of the lounge.
Both Wagner and the police Personnel Officer who assigned Wagner to the detail at the Heritage Lounge have filed affidavits explaining that outside detail assignments are made by the police department in accordance with the collective bargaining agreement between the Town and the police officers’ union. That agreement spells out how such assignments are made. It also specifies that officers are not to perform detail work without such official assignment. Both affidavits assert that such officially assigned detail work is undertaken in the officer’s official capacity as a police officer, not as an employee of the entity requesting the detail. Both affidavits are silent, however, on the question of how or by whom a detail officer’s activities at the site are controlled or directed.
Plaintiff argues that the present case sets forth sufficient facts to let the matter of Wagner’s status be submitted to a jury. He relies predominantly on Davis v. DelRosso, 371 Mass. 768 (1977), in which the court upheld a jury’s verdict finding a bar owner liable for an assault committed by a paid detail police officer. In Davis, there were sufficient facts for the jury to conclude that the officer was an employee of the bar, such that the bar could be held vicariously liable for his conduct, where the officer’s task at the premises was comparable to that of a “bouncer,” the work was performed on the bar premises and not on the public sidewalk, and the officer was performing the detail alone without the presence of other officers or any commanding officer. 371 Mass, at 771-72.
Defendants correctly point out that Davis did not address the issue of whether the officer was a public employee for purposes of immunity from suit for negligence. The issue was whether the officer was an employee of the bar, as opposed to an independent contractor, for purposes of a claim based on an intentional tort. However, the court did hold that the facts in Davis were sufficient to conclude that the officer was the functional employee of the bar. The facts that the court held sufficient in Davis are all present in this action. While those facts certainly do not compel the conclusion that Wagner was an employee of the lounge rather than a public employee, they do seem to permit *390 such a result according to the principles enunciated in Davis. In light of Davis, and in light of the fact that neither side has submitted evidence on the decisive issue of control over Wagner’s activities, the court can not grant summaiyjudgment on the issue ofWagner’s status as a public employee.
B. Negligence of Wagner
Assuming that Wagner was not acting as a public employee on the night in question, plaintiff would still have to establish all the elements of a negligence claim against him individually. Wagner, acting in the capacity as a bouncer or security guard, would owe a duty to Dupre, a patron of the bar. However, on the elements of breach and causation, plaintiffs claim fails as a matter of law.
The theory of breach is not that Wagner failed to respond to the attack, or that Wagner provoked the attack in any way. The alleged negligence is merely that Wagner stationed himself elsewhere in the establishment and allegedly did not make rounds of the entire premises.[6]
It is difficult to frame a security officer’s decision on where to position himself as “negligence.” For example, continuous rounds of the entire premises would mean, by definition, that Wagner could not keep a constant watch on the entry to prevent the admission of unruly, intoxicated, or otherwise undesirable persons from gaining entry. One could just as easily contend that abandoning one’s vigil over the entry to such an establishment raises a greater risk than failing to make regular observational sweeps through the entire lounge. Wagner was the sole officer present that night. He could not be present in all areas of the lounge at all times. There is no allegation (and no evidence) that he was not attending to security duties or that he had abandoned his post. The trade-offs inherent in his decision as to where he should stand, how frequently he should check other areas, etc. do not constitute negligence.
Even if plaintiff were able to establish some breach on the part of Wagner, he would further have to show that that breach was a proximate cause of the assault and batteiy that occurred. On that critical element, plaintiffs case rests entirely on speculation. Plaintiffs causation case is based on the totally conjectural hypothesis that if Falcone had known there was a police officer on the premises, he would not have committed the assault.[7] The record indicates that the assault in question was sudden, immediate and unprovoked. It was also committed in the presence of various eyewitnesses, all of whom would be able to (and ultimately did) identify Falcone as the attacker.[8] Where the presence of other persons did not suffice to prevent this attack, how would the mere knowledge that those persons could summon prompt help from a police officer or security guard have prevented it? Dupre concedes that Wagner had no obligation to be present in the Navy Yard Room at any particular time, and thus can not make out his causation element by showing that Wagner’s presence in the room itself would have prevented the attack. Rather, he must establish, by a preponderance of the evidence and not by speculation, that mere awareness on the part of Falcone that a policeman could be on the scene promptly would have been sufficient to constrain Falcone from his sudden outburst. There is no evidence on this record, and the court can not even envision what sort of evidence might ever be produced, that would transform plaintiffs speculative causation theory into a permissible inference that would satisfy his burden of proof.
ORDER
For the foregoing reasons, the motion for summary judgment in favor of defendants Leonard Wagner and the Town of Dracut is hereby ALLOWED.

Also named as defendants were the alleged assailant, the owners of the bar, and the owner of the property who leased the premises to the bar.

This allegation about prior disturbances and an alleged obligation on the part of the Town to have placed conditions on the renewed license is not set forth or even suggested by the allegations in the original complaint.

These amendments are applicable “to all claims upon which a final judgment has not entered, or as to which an appeal is pending or the appeal period has not expired, and to all claims upon which suit is filed after the effective date of this act.” St. 1993, c.495, §144. The retroactive application of these Tort Claims Act exclusions has been upheld. Carleton v. Town of Framingham, 418 Mass. 623, 634 (1994). The present matter was pending as of the effective date of the amendments and is thus governed by the amended version of the Tort Claims Act.

In light of this amendment, it is not necessary to examine the Town’s earlier argument that the decision whether or not to renew a liquor license is a discretionary function. G.L.c. 258, §10(b).

There is a further set of clarifications to §10(j), explaining that the exception itself does not apply to certain situations, including “any claim based upon explicit and specific assurances of safety or assistance, beyond general representations that investigation or assistance will be or has been undertaken, made to the direct victim or a member of his family or household by a public employee, provided that the injury resulted in part from reliance on those assurances.” §10(j)(l). Plaintiff has not alleged that he received or relied on any such “explicit and specific assurances of safety" from anyone.

Wagner claims that he did make such rounds. Plaintiffs affidavit states that Wagner did not “enter" the Navy Yard Room during the hour prior to the attack. For purposes of this summary judgment motion, the court must accept plaintiffs version as true.

Wagner’s alleged failure to “enter” the Navy Yard Room does not compel the inference that Falcone was unaware of the fact that a police officer was present. For purposes of a summary judgment motion, however, the court must draw all reasonable inferences in plaintiffs favor. The court will therefore infer, for purposes of the present motion, that Falcone was unaware ofWagner’s presence on the premises.

 Those present included at least one employee of the lounge (the individual who was restraining Falcone when Wagner arrived), who would have some duty to monitor signs of intoxication or unruly behavior and, if necessary, summon Wagner to the scene.