APPEALS COURT 
 
 WILLIAM J. DOYLE, personal representative,[1] & others[2] vs. CITY OF QUINCY & others[3]

 
 Docket:
 23-P-574
 
 
 Dates:
 April 9, 2024 – October 3, 2024
 
 
 Present:
 Neyman, Brennan, & Toone, JJ.
 
 
 County:
 Plymouth
 

 
 Keywords:
 Massachusetts Tort Claims Act. Public Employment, Police. Police, Outside employment, Negligence. Negligence, Police, Public employee. Practice, Civil, Motion to dismiss.
 
 

       Civil action commenced in the Superior
Court Department on January 21, 2022. 
      A motion to dismiss was heard by Michael
A. Cahillane, J. 
David Hadas for
the defendants.
Hugh R. Curran
(Danielle L. Nudelman-McGonigle also
present) for the
plaintiffs.
      TOONE, J. 
This interlocutory appeal concerns the standard for pleading negligence
claims against public employees for alleged conduct committed outside the scope
of their office or employment.  Following
a man's tragic death at a private establishment in Quincy (city), his estate,
wife, and children sued the city's police chief and a police officer who was
assigned to work there on a police detail. 
After these defendants moved to dismiss under Mass. R. Civ. P.
12 (b) (6), 365 Mass. 754 (1974), a Superior Court judge dismissed
the claims against them in their official capacity, but denied the motion as to
the claims against them in their individual capacity because the Massachusetts
Tort Claims Act (MTCA) does not immunize public employees from liability for
conduct outside "the scope of [their] office or employment."  G. L. c. 258, § 2.  After examining whether the allegations in
the complaint plausibly suggest that they acted outside the scope of their
office or employment, we affirm the denial of the motion as to the officer but
conclude that all claims against the chief of police should be dismissed.
      Background.  We summarize the pertinent facts as alleged
in the plaintiffs' complaint, accepting as true the factual allegations therein
and drawing all reasonable inferences in the plaintiffs' favor.  See Curtis v. Herb Chambers I-95, Inc., 458
Mass. 674, 676 (2011).  The lead
plaintiff is the personal representative of the estate of Christopher W.
McCallum, who was killed in a fight at the Robert I. Nickerson Post
No. 382, Inc. (Nickerson Post), in the city after attending a concert
there on January 26, 2019.  The defendant
Paul Keenan was the chief of the city's police department, and the defendant
Christopher Bulger was an officer in that department.  
      The Nickerson Post invited and sold
concert tickets to the general public. It also hired a "Quincy police
detail" to ensure safety and security. 
Bulger was the police officer assigned to work the detail on January
26.  That evening, the Nickerson Post was
"over capacity" and in "complete chaos."  It overserved alcohol to patrons, and there
were numerous fights, disturbances, and assaults.  Bulger did nothing to stop the overservice of
alcohol, address violent behavior, or remove the responsible individuals.  He left his post early, "leaving no
security in place for the duration of the event, when he knew, or should have
known, that the conduct of patrons was escalating and would lead to further
violence."  On the early morning of
January 27, McCallum attempted to aid a patron who was being assaulted by two
intoxicated patrons, was assaulted himself, suffered injuries, and died the
next day.  
      The plaintiffs commenced this action against,
among other defendants, the city, Keenan, and Bulger.  Pertinent to this appeal, the complaint
asserted claims against the city for negligence; negligence resulting in
wrongful death under G. L. c. 229; and gross negligence resulting in
wrongful death under G. L. c. 229, relating to the allegedly
dangerous conditions at the Nickerson Post. 
The complaint asserted similar claims against both Keenan and Bulger, as
well as an additional claim against Bulger for wanton and reckless conduct
resulting in wrongful death under G. L. c. 229.  McCallum's wife and children also asserted
claims against Keenan and Bulger, among others, for loss of consortium based on
the other claims and allegations in the complaint.  The plaintiffs sued Keenan "in his
official capacity as the Chief of Police of the Quincy Police Department,"
as well as "personally and individually," and Bulger "in his
official capacity as a Quincy Police Officer as well as in his personal and
individual capacity."
      The city, Keenan, and Bulger moved to
dismiss the claims against them for failure to state a claim.  See Mass. R. Civ. P.
12 (b) (6).  The judge declined
to dismiss Keenan and Bulger as parties, reasoning that "a paid detail by
a police officer raises a jury question regarding whether the officer was
acting as a public officer in a public place or as an employee of the private
establishment for private purposes on private property," and "the
scope of employment is usually a jury question."  He dismissed the claims against the city
under G. L. c. 258, § 10 (h),[4] and dismissed the claims
against Keenan and Bulger in their official capacity for the same reason.  The judge denied that portion of the motion
seeking to dismiss the claims against Keenan and Bulger in their individual
capacity "because the MTCA only applies to government employees acting
within the scope of their office or employment."  Keenan and Bulger appeal from that denial
under the doctrine of present execution. 
See Brum v. Dartmouth, 428 Mass. 684, 688 (1999).
      Discussion.  We review the sufficiency of the plaintiffs'
complaint de novo.  See Curtis, 458 Mass.
at 676.  "[W]e look beyond the
conclusory allegations in the complaint and focus on whether the factual
allegations plausibly suggest an entitlement to relief."  Id., citing Iannacchino v. Ford Motor Co.,
451 Mass. 623, 635-636 (2008).
      In 1978, the Legislature enacted the MTCA
"to replace the common-law doctrine of governmental immunity, and its
myriad judicially created exceptions, with a comprehensive statutory scheme
governing the tort liability of public employers."  Morrissey v. New England Deaconess Ass'n --
Abundant Life Communities, Inc., 458 Mass. 580, 590 (2010).  Under the MTCA, public employees who commit
"negligent or wrongful" acts or omissions "while acting within
the scope of [their] office or employment" are immune from liability.  Berry v. Commerce Ins. Co., 488 Mass. 633,
636 (2021), quoting G. L. c. 258, § 2.  Instead, unless a statutory exemption
applies, see note 4, supra, public employers may be held liable for injuries
caused by the negligent or wrongful acts or omissions of their employees acting
within the scope of their office or employment, but their liability is capped
at $100,000 per plaintiff.  See Irwin v.
Ware, 392 Mass. 745, 766-767 (1984), citing G. L. c. 258, § 2.
      The immunity afforded to public employees
by G. L. c. 258, § 2, encompasses claims for negligence, gross
negligence, and reckless conduct.  See
McNamara v. Honeyman, 406 Mass. 43, 46 (1989); Parker v. Chief Justice for Admin.
& Mgt. of the Trial Court, 67 Mass. App. Ct. 174, 180 (2006); Jackson v.
Milton, 41 Mass. App. Ct. 908, 908-909 (1996). 
Because that includes all the claims asserted against Keenan and Bulger,[5]
they are immune to the extent that the claims are based on alleged conduct
within the scope of their office or employment. 
See Taplin v. Chatham, 390 Mass. 1, 2 (1983).  On the other hand, the claims may proceed if
their alleged conduct occurred outside the scope of their office or employment,
because the MTCA does not immunize public employees for such conduct.  See Berry, 488 Mass. at 633-634.  In that case, they may be held personally
liable, without the benefit of the $100,000 cap under G. L. c. 258,
§ 2.  
      That the plaintiffs sued Keenan and Bulger
in their individual capacity does not resolve the scope of the office or
employment issue.[6]  Although this
averment indicates a belief (at least, in the alternative, see infra) that
these defendants acted outside the scope of their office or employment,
conclusory allegations and labels are inadequate to plausibly suggest a
plaintiff's entitlement to relief.  See
Iannacchino, 451 Mass. at 636.  Rather,
to proceed with their claims against Keenan and Bulger, the plaintiffs'
allegations must plausibly suggest that each defendant's conduct occurred
outside "the scope of his office or employment" and is therefore not
shielded by the immunity that public employees usually receive under G. L.
c. 258, § 2.[7]
      "The scope of an employee's
employment is not construed restrictively."  Clickner v. Lowell, 422 Mass. 539, 542
(1996), quoting Howard v. Burlington, 399 Mass. 585, 590 (1987).  In determining whether public employees acted
within the scope of their employment, courts "apply the common-law test,
which is based on principles of vicarious liability, respondeat superior, and
agency, and which 'considers whether the act was in furtherance of the
employer's work'" (footnote omitted). 
Berry, 488 Mass. at 636-637, quoting Clickner, supra.  Courts consider "three factors, each of
which must be met to sustain the conclusion that the employee's conduct fell
within the scope of the employment: 
(1) 'whether the conduct in question is of the kind the employee is
hired to perform'; (2) 'whether it occurs within authorized time and space
limits'; and (3) 'whether it is motivated, at least in part, by a purpose
to serve the employer.'"  Berry,
supra at 638, quoting Clickner, supra.  
      Here, the allegations do not plausibly
suggest that Keenan acted outside the scope of his office.  All of his alleged conduct was "in
furtherance of" his duties as chief of police.  Clickner, 422 Mass. at 542.  For example, the complaint alleges that
Keenan inadequately trained officers assigned to details at private
establishments, failed to promulgate policies and procedures on detail
assignments, and did not investigate or discipline officers who abandoned their
assigned posts.  Keenan is not alleged to
have done work he was not hired to perform by the city, acted outside the
authorized limits of his role as chief, or been motivated entirely by a purpose
other than serving the city.
      The plaintiffs argue that, since they
allege that other city police officers did not properly investigate individuals
involved in McCallum's death (because those individuals were related to another
member of the police department), it can be inferred that Keenan and Bulger
"were motivated by personal and political aims rather than to serve the
interests of their municipal employer." 
Setting aside whether it is reasonable to infer a party's motivation or
intent from the alleged actions of others, the allegations do not in any event
plausibly suggest that Keenan's conduct was not motivated "at least in
part" by his duty to serve the city. 
Berry, 488 Mass. at 638, quoting Clickner, 422 Mass. at 542.  See Wang Lab., Inc. v. Business Incentives,
Inc., 398 Mass. 854, 859-860 (1986) (employee's interference with contractual
relations "motivated by self-interest" but fell within scope of
employment because he acted "at least in part" with intent to serve
employer); Pettiford v. Branded Mgt. Group, LLC, 104 Mass. App. Ct. 287,
293-294 (2024).[8]  Officer training and
discipline and the issuance of policies and procedures are central to the work
of a police chief, and the claim that Keenan's execution (or nonexecution) of
these functions was not even partly motivated by his duties as chief is
untenable. 
See Restatement (Third) of Agency § 7.07(2)
& comment c (2006) (failure to perform assigned responsibilities may be
within scope of employment).
      As for Bulger, at least at the pleading
stage this case is controlled in material respects by Davis v. DelRosso, 371
Mass. 768, 770-772 (1977).  In that case,
a cafe had "an informal arrangement" with a city police department in
which off-duty officers served as bouncers at the cafe, apparently in uniform
but not under the command of a superior officer.  Id. at 770. 
The court concluded that, based on these facts, a jury could find that
the officer was "acting not as [a] public [officer] in a public place but
as [an employee] of the defendant for its private purposes on its private
premises."  Id. at 772, quoting
Cowan v. Eastern Racing Ass'n, 330 Mass. 135, 144 (1953).  Although that case was decided before the
MTCA was enacted, the court applied the same "common-law test" used
to determine scope of employment under the MTCA.  Berry, 488 Mass. at 636-637.
      Applying Davis, and drawing all reasonable
inferences in the plaintiffs' favor, we conclude that the allegations support a
plausible inference that Bulger's allegedly tortious conduct occurred outside
"the scope of his office or employment."  G. L. c. 258, § 2.  The plaintiffs sued Bulger for his acts and
omissions while working essentially as a security guard at a private
establishment.  Even though the complaint
does not specify who paid Bulger or assigned him his duties at the Nickerson
Post, it alleges sufficient facts to infer that he was being paid separately
for his work on the detail and that his duties there were distinct from his authorized
duties as a police officer.  It can also
be inferred from his alleged indifference to the overservice of patrons and
unruly behavior at the Nickerson Post that he was motivated to serve the
commercial interests of that establishment, not the interests of the police in
maintaining public order and safety.
      To be sure, some of the allegations in the
complaint are inconsistent with the plaintiffs' contention that Bulger acted
outside the scope of his employment.  For
example, the allegation that detail officers "frequently leave or are
discharged early from detail assignments, without impunity [sic], in violation
of the City of Quincy's rules and regulations" implies that, as a detail
officer, Bulger was subject to the city's oversight and control.  Similarly, the allegation that the city
failed to adequately train its officers on "the reasonable performance of
a detail officer's duties in a licensed premise" suggests that the city
exercised authority over police details.[9] 
Insofar as the plaintiffs sued Keenan and Bulger in both their official
and individual capacities (as well as the city itself) about the allegedly
inadequate security at the Nickerson Post, it is not surprising that some of
their allegations conflict.  Because a
complaint "may demand relief in the alternative and may contain
inconsistent allegations," those conflicting allegations do not require
dismissal of the individual capacity claims against Bulger now.  Whitinsville Plaza, Inc. v. Kotseas, 378
Mass. 85, 89 (1979).  See Anzalone v. Administrative
Office of the Trial Court, 457 Mass. 647, 652 (2010), quoting Matter of Hilson,
448 Mass. 603, 613 (2007) ("Modern rules of pleading permit alternative
pleading"); Mass. R. Civ. P. 8 (e) (2), 365 Mass. 749 (1974).
      Although the plaintiffs, under
Massachusetts precedent, may proceed with their claims against Bulger at this
stage of the proceedings, our holding does not imply any view as to how this
issue will ultimately be resolved.  See
Doe v. Cambridge Pub. Sch., 101 Mass. App. Ct. 482, 485 (2022), quoting
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("The plausibility standard is
not akin to a 'probability requirement'"). 
Rather, we expect that the scope of Bulger's employment will continue to
be a critical issue as the plaintiffs litigate their claims against him.  Among the facts that may bear on this issue
are who hired or assigned Bulger to work as a detail; what communications took
place among Bulger, the city or police department, and the Nickerson Post about
his role; who paid him and how; who directed, controlled, and supervised his
activities at the Nickerson Post; whether Bulger wore a police uniform; what
role the city or police department has in authorizing details at private
establishments; and what official rules, policies, or procedures apply to
detail work.  See Berry, 488 Mass. at
639-641 (identifying circumstances relevant to whether police officer was
acting within scope of employment); Clickner, 422 Mass. at 542-544 (same);
Davis, 371 Mass. at 771-772 (same).  We
further note that while sometimes the scope of a defendant's office or
employment can present an issue for the jury, see, e.g., Davis, supra at 772,
in other cases the issue can be appropriately decided at summary judgment.  See, e.g., Berry, supra at 634; Taplin, 390
Mass. at 2.  In general, because the
issue determines whether a defendant will receive the immunity generally
afforded to public employees under G. L. c. 258, § 2, it should
be decided at the earliest possible stage of litigation.
      Conclusion.  The portion of the order denying the motion
to dismiss counts XXVIII, XXIX, XXX, XXXI, and XXXII against Keenan is
reversed.  The portion of the order
denying the motion to dismiss the claims against Bulger in his individual
capacity is affirmed.
So ordered.

footnotes

[1] Of the estate
of Christopher W. McCallum.

[2] Kathleen E.
McCallum, individually and on behalf of her two minor children, and Ryan W.
McCallum.

[3] Christopher
Bulger and Paul Keenan.

[4] General Laws
c. 258, § 10 (h), "immunize[s] a municipality when the
criminal acts of a third person are a cause of a plaintiff's harm, and the
police were negligent in not preventing that criminal conduct."  Carleton v. Framingham, 418 Mass. 623, 629
(1994).  

[5] The
plaintiffs do not contend that their claim against Bulger for wanton and
reckless conduct resulting in wrongful death under G. L. c. 229 is an
intentional tort that falls outside the scope of G. L. c. 258,
§ 2.  See Desmond v. Boston Elevated
Ry., 319 Mass. 13, 16 (1946) (distinguishing "wanton" and
"reckless" in wrongful death statute from willful conduct "in
the sense of conduct intended to do harm").  Nor do they dispute that Keenan and Bulger
were public employees at the time.  See
McNamara, 406 Mass. at 48, citing Kelley v. Rossi, 395 Mass. 659, 661 (1985).

[6] Under Mass.
R. Civ. P. 9 (a), 365 Mass. 751 (1974), it is not necessary for a
plaintiff to aver "the capacity of a party to sue or be sued."  Rather, a party that wishes to raise an issue
as to such capacity may do so "by specific negative averment," id.,
or, where the issue appears from the face of the complaint, through a motion to
dismiss under rule 12 (b).  See
Orion Ins. Co. PLC v. Shenker, 23 Mass. App. Ct. 754, 756 (1987).

[7] In general,
damages claims against government officials or employees sued in their official
capacity are treated as claims against the government entity itself and are
subject to whatever immunity may apply to that entity.  See, e.g., Howcroft v. Peabody, 51 Mass. App.
Ct. 573, 596 (2001) (intentional tort claims against city employees sued in
official capacity properly dismissed because municipalities not liable for
intentional torts committed by employees under G. L. c. 258, § 10 [c]).  If they are instead sued in their individual
capacity, other limitations on their liability may apply.  See, e.g., Nelson v. Salem State College, 446
Mass. 525, 537 (2006) (although public employees may be personally liable for
intentional torts, doctrine of common-law employee immunity applies).  The immunity provided under G. L.
c. 258, § 2, shields public employees from liability for negligence
even when they are sued in their individual capacity.

[8] In Pettiford,
we considered whether, under the doctrine of respondeat superior, the plaintiff
could bring a claim for violation of the public accommodations law against the
employer of a cook who allegedly delayed his order, threw food at him, and
called him a racial epithet.  104 Mass.
App. Ct. at 293.  We concluded that the
claim against the employer could proceed because the allegations satisfied each
of the three factors required to determine that the cook acted within the scope
of her employment.  See id. at
293-295.  The procedural posture of this
case is different because, as public employees, Keenan and Bugler are liable
only for alleged conduct that occurred outside the scope of their office or
employment.  G. L. c. 258,
§ 2.  Nevertheless, the same test
for scope of employment applies in both situations.

[9] The
defendants also point to the allegation that Bulger's actions "were taken
under color of the laws of the Commonwealth of Massachusetts and the City of
Quincy."  While an allegation that a
defendant "acted under color of law" is an essential requirement for
an action under 42 U.S.C. § 1983, it is not necessarily inconsistent with
a claim that the defendant acted outside "the scope of his office or
employment" for purposes of G. L. c. 258, § 2.  A defendant may "act[] under color of
State law" but not "within the scope of his employment" if he
misuses or abuses the authority given to him by the government.  Maimaron v. Commonwealth, 449 Mass. 167, 178
(2007).